Jesse D. Gregory For the Use of Charles Frank Cusimano, d/b/a C & C Trucking Company and James Airamo, Plaintiffs-Appellees, v. Highway Insurance Company, a Stock Company, Defendant-Appellant.

**Gen. No. 11,311.**

Second District, Second Division.
February 8, 1960.
Released for publication February 25, 1960.

Charles D. Snewind, Robert L. Brody, and Brody and Gore, all of Chicago, for defendant-appellant.

Krusemark and Bertani, of Joliet (Mark P. Meers, of counsel) for plaintiffs-appellees.

PRESIDING JUSTICE SOLFISBURG delivered the opinion of the court.

This is a garnishment proceeding instituted by Charles Frank Cusimano d/b/a C & C Trucking Co. and James Airamo against the defendant, Highway Insurance Company (a stock company), to collect a

judgment entered by default in favor of the plaintiffs and against one Jesse D. Gregory on December 1, 1955, for the sum of $4,567.51 and costs for personal injuries and property damage sustained in an automobile collision on April 14, 1954, in Will County, Illinois. The present case was filed in the Circuit Court of Will County and was tried by the court without a jury on a lengthy stipulation of facts. The trial judge found the issues in favor of the plaintiffs and entered judgment in their favor, whereupon this appeal followed.

The plaintiffs initially filed in the instant case "Allegations and Interrogatories" to be answered by Highway Insurance Company, garnishee-defendant (hereinafter called "Highway"), which set forth the prior judgment obtained against Jesse D. Gregory (hereinafter called "Gregory"), for injuries to the plaintiff, Airamo, and for property damage sustained by the plaintiff, Cusimano, in a collision between a vehicle driven by Gregory and a truck driven by Airamo and owned by Cusimano. The plaintiffs' allegations and interrogatories averred that on the date of the collision Highway insured Gregory against bodily injury and property damage liability and that its policy was in full force and effect on that date. The garnishee-defendant admitted that it had a public liability policy on an automobile owned by Gregory but stated that it had no knowledge that said automobile was the vehicle involved in the collision referred to and further stated that it refused to pay the judgment rendered against Gregory on the following grounds:

- A. Gregory breached Condition No. 1 of that insurance policy in that he failed to give written notice to the company or its authorized agent of this accident as soon as practicable.
- B. Gregory failed to comply with Condition No. 16 of said policy in that he failed and neglected to cooperate with the company.

287

C. Gregory failed to give notice of the pendency of the action against him and failed to give notice of claim and suit as required by Condition No. 2 of said policy.

Defendant contends in its brief and argument that Gregory failed (1) to give written notice of the accident to the defendant insurance company or any of its authorized agents as soon as practicable and in sufficient detail as required by the policy, and (2) failed to cooperate with the company when he left his only known address without advising the company where he could be reached. Defendant further contends that the plaintiffs herein have no better rights than Gregory and that his defaults and failure to cooperate with his insurer bar any recovery by them under the policy. On the other hand, it is the position of the plaintiffs that the garnishee-defendant failed to sustain the burden of proof required of it to establish the affirmative defenses of failure of notice and non-cooperation raised by it; that insurance policy provisions having been prepared by the insurance carrier are to be construed most strongly against the insurer and in favor of the insured; that in fact Gregory did contact the garnishee-defendant between the time of the accident and the trial of the original action by plaintiffs against Gregory; that adequate notice of the accident was given to the defendant by plaintiffs' attorneys; that the garnishee-defendant cannot preponderate on the issue of failure of cooperation having itself failed to exercise reasonable diligence in ascertaining the whereabouts of the insured and having demonstrated a lack of good faith in attempting to obtain the cooperation of its insured.

On March 15, 1954, the defendant, Highway, issued its combination automobile policy to Gregory with bodily injury liability limits of $5,000/10,000 and property damage coverage of $5,000, covering one

288

1941 Chevrolet 4-door sedan for a period of one year. The insured's address, as given in the policy, was 6117 South Indiana Avenue, Chicago, Illinois. The policy contained the usual provision with reference to notice of accidents ("When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."). In addition to the usual provision requiring the insured to immediately forward to the company every demand, notice, summons or other process, the policy provided that no action would lie against the company unless, as a condition precedent thereto, the insured should have fully complied with all the terms of the policy, and further that the "insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits . . ."

On April 14, 1954, approximately one month after the policy became effective, an automobile collision occurred at the intersection of Route 30 and Route 42-A in Will County, involving the plaintiffs' semi-trailer and a motor vehicle driven by Gregory. The stipulation of facts states that Mr. Roy C. Johnson, who was in charge of the investigation of automobile claims for the garnishee-defendant, would testify if called as a witness that no report of this accident was ever received by Highway from its insured, Gregory, and likewise no summons or other process was ever received by Highway from its insured. It is undisputed that subsequent to this collision there was an amend-

ment to the coverage clause in the policy in question, which amendment, dated May 28, 1954, changed coverage from the 1941 Chevrolet originally insured to a Plymouth four-door Sedan described in the policy amendment. Following is a summary of the evidence as stipulated by the parties. On May 6, 1954, Highway received a letter of said date from Krusemark and Krusemark, attorneys for the plaintiffs, which stated that that firm represented the plaintiffs in connection with their claims arising out of this auto accident, set forth the place of the collision, their clients' version of the collision, the nature and extent of the personal injuries and property damage, and requested that negotiations be undertaken looking to a possible settlement of the claims. This communication implied that Highway had previously corresponded with the plaintiffs or their counsel concerning this accident. On May 18, 1954, Attorneys Krusemark and Krusemark again wrote a letter to Highway inquiring as to Highway's disposition with reference to these claims. On June 1, 1954, Krusemark and Krusemark addressed a letter to Gregory at 6117 South Indiana Avenue, Chicago, Illinois, copy of which was sent to Highway, which letter advised Gregory of the plaintiffs' claims and notified him that the writers claimed an attorney's lien in that connection. On June 15, 1954, Highway addressed a letter to Krusemark and Krusemark, advising that that company was in receipt of prior correspondence pertaining to the accident in controversy, and "upon completion of our investigation we will contact you with reference to an amicable disposition if warranted." On June 19, 1954, Attorneys Krusemark and Krusemark addressed a letter to Highway advising that suit had been filed in the local circuit court on these claims but that if Highway desired, plaintiffs' counsel would hold up service of summons preparatory to completion of Highway's investigation.

Counsel for plaintiffs pointed out that they would delay service of summons if Highway would agree to accept process in the event an amicable disposition of the claims could not be worked out. Thereafter, by letter dated June 25, 1954, Highway advised plaintiffs' attorneys that "we are in receipt of your letter of June 19th and would appreciate very much if you would hold up on the serving of the summons as we are attempting to complete our investigation of said accident. We cannot however agree to accept process as same would have to be completed through the proper channels by serving our policyholder and they in turn submit said process to the company for handling. Thanking your for your cooperation." Subsequently, on July 9, 1954, Krusemark and Krusemark wrote to Highway "Pursuant to our most recent conference with the investigator assigned to this case, we are enclosing herewith the necessary proofs of loss incurred by our client as the result of the above accident. We will summarize them as follows:

| | |
|---|---:|
| "Property damage to tractor | $ 588.50 |
| Property damage to trailer | 1914.57 |
| Net cargoe loss | 444.01 |
| Towing charge | 35.00 |
| Tractor trailer, loss of use | 100.00 |
| Rental charges, approximately | 200.00 |
| | $4182.08 |

"The driver, James Airamo, suffered a head injury for which he did not seek any medical attention. However, he was forced to miss three days' work and has suffered serious headaches and bodily discomforts as a result thereof. Our demand for settlement of this case is the exact amount as indicated by the total of the property damage, loss of use, towing and rental, which is $4182.08. For James Airamo we demand

$300.00. We ask that you take immediate action on this matter. We were assured by your adjuster that we would receive a response from you by the end of the month. The loss of use of $1,000.00 is based upon a four weeks' loss of use of both units, the tractor and trailer, and is computed at the basis of $100.00 loss per day which can be substantiated by our client's books of account. The rental figure is the cost incurred by our client in renting the trailer to replace the one damaged. Incidentally, the Commercial Truck Body Company has indicated that the trailer is a total loss. Our book value of the trailer is approximately $2200.-00." To this communication were attached four invoices or estimates to substantiate the asserted items of damage.

Thereafter, by letter dated August 5, 1954, counsel for plaintiffs advised Highway "On July 9, 1954, we gave you a complete list of the loss suffered by our client as a result of the above accident. We believe that you have had adequate time to study this file and to contact us, in regard to a possible settlement. Our client is becoming very impatient. Unless we hear from you within one week we will assume that you have decided to decline our claim and will proceed with our efforts to have Jesse D. Gregory served with summons."

On August 9, 1954, Highway addressed a registered letter "return receipt requested" to Mr. Jesse D. Gregory at 6117 So. Indiana Avenue, Chicago, Illinois: "With further regard to your loss, and pending investigation of the above captioned matter. Kindly come to this office at your convenience on or before August 13, 1954. It is very important that we discuss this matter with you in person. In the event that it will be impossible for you to appear on or before the aforementioned date; kindly contact the undersigned by telephoning WEbster 9-5225, extension 19, so that an appointment may be made. Your prompt attention

292

is requested in this matter . . . ." This registered letter was returned marked, "Moved—Left No Address." A carbon copy of this letter was sent to the insurance broker who sold this policy. The garnishee-defendant maintained that preliminary forms to be completed by Gregory were sent to him with this letter dated August 9, 1954, which was the company's only attempt to communicate with Gregory by mail; however, that letter made no reference to any forms or any enclosures.

Meanwhile, shortly before July 1, 1954, Highway conducted an investigation in connection with these claims, during which an investigator called at the Chicago address, 6117 South Indiana Avenue, interviewed various tenants in the building; was unable to find Gregory, and was likewise unable to find anyone who knew Gregory's address. As early as June 16, 1954, Highway had made an investigation which indicated that Gregory was in the Veterans' Hospital at Hines, Illinois, and after failing to find Gregory at the South Indiana Avenue address, on July 1, 1954, the investigator went to Hines where, after contacting government agencies, he was unable to find Gregory's whereabouts. As a matter of fact, Gregory had left Hines Hospital on June 18, 1954. On July 30, 1954, Highway's investigator interviewed both of the plaintiffs and secured a copy of the police report.

Meanwhile, Krusemark and Krusemark, by letter dated July 16, 1955, advised Highway that service of summons had been served on the defendant Gregory through service on the Illinois Secretary of State since Gregory was now a resident of Gary, Indiana. In the same letter, counsel for plaintiffs advised they were preparing to proceed with proofs for a default, and unless they heard from Highway as to its intentions within ten days, counsel intended to proceed.

An office memorandum of Highway, dated June 21, 1955, from Mr. Roy C. Johnson of the Claims De-

partment to Mr. Brody reads as follows: "Attached please find file wherein we received a letter from the claimant's attorneys that service of summons on our policyholder is being served through the Secretary of State in Indiana. This is the case where our policyholder was involved in an accident on Route #30 in Will County and there was some question as to whether or not our policyholder was at fault. We are attempting to contact our policyholder both by having an adjuster call at his place on several occasions and also wrote registered mail to have him come into our office however all was in vain. The claimant is demanding $4182.08 on property damage and there is also a claim for personal injury by the driver of claimant's unit. I discussed this with Mr. Sullivan and he advised that I submit this file to you for your review and further advices as to whether we should continue with our efforts to contact our policyholder in Indiana whose address is unknown. RCJ. Call and get address from attys."

Another office Memorandum of Highway, undated, from S. Butland to R. C. Johnson is as follows: "Per your instructions, I called the law offices of Krusemark and Krusemark re letter written by their Mr. Bertani. He was out, but I left a message with his secretary to the effect that we would like to know our policyholder's address, as we have been unsuccessful in reaching him. The girl said she believed that they did not know this info, but that she would have Mr. Bertani write us further."

A third office Memorandum of Highway, dated June 30, 1955, reads as follows: "Discussed letter and attached affidavit [for service upon the Secretary of State] with Mr. Brody, Gore and Sullivan and it was decided as direct service was not given our assured, to allow file to remain in abeyance and later proceed with garnishment if necessary."

294

Meanwhile, attorneys Krusemark and Krusemark, by letter dated June 24, 1955, advised Highway that the last definite address for Gregory which they had was a Kedzie Avenue address in Chicago, but that plaintiff's investigators were informed that Gregory was now residing in Gary, Indiana. Counsel said that if they did not hear from Highway they would proceed with a default judgment.

On November 4, 1955, Krusemark and Krusemark sent a letter by registered mail to Highway advising that the matter of C & C Trucking Company v. Gregory, pending in the Circuit Court of Will County, as Cause No. 56456 was set for trial on Friday, November 18, at 1:30 P.M. in the Circuit Court of Will County.

Thereafter, by letter dated February 28, 1958, counsel for plaintiffs advised Highway that a default judgment had been entered against Gregory on December 20, 1955, in the amount of $4,567.51 and that garnishment proceedings would be instituted thereon unless Highway replied immediately in regard to a possible settlement. To this Highway replied by letter dated March 4, 1958, advising that "there is no liability on behalf of our company in the captioned matter."

■ ■ The first issue presented to the trial court concerned the policy requirement of notice to the insurer regarding the accident. While the garnishee-defendant concedes that notice may be made by the injured claimant rather than by the insured, it contends that the notice given by the plaintiffs and their attorneys failed to satisfy the policy requirements in that it was not given "as soon as practicable" and did not contain sufficient detail. Notice was given to the defendant Highway by counsel for plaintiffs some 22 days after the accident, and by its letter dated June 25, 1954, with enclosures and other correspondence, more than adequate notice and proofs of loss

295

were given to the insurance company concerning the accident in question. It is now clearly established in this State, following the decision in Simmon v. Iowa Mut. Casualty Co., 3 Ill.2d 318, that notice of the accident to the insurer need not necessarily be limited to notice given by the insured named in the policy and that it actually does not matter who gives the notice as long as a reasonable notice is given. In the Simmon case notice of the accident given to the insurance company by plaintiff's attorney 37 days after the accident occurred was held to be within a reasonable time. We cannot say that under the circumstances here present the trial court erred in finding the notice given by counsel for plaintiffs was a reasonable notice.

The related issue concerning the insured's failure to give notice of the pendency of the suit must also be decided in favor of the plaintiffs. It is to be observed that process was served upon the Illinois Secretary of State, pursuant to the provisions of the Illinois Motor Vehicle Act, and that while notice was directed to Gregory, the insured, at his last three known addresses, the record fails to indicate whether or not he actually received any advice that a suit had been filed against him. The record is clear that Highway was advised by letters from plaintiffs' attorneys, first, that suit had been instituted and, secondly, that the suit had been set for trial at a specified future date and time. A period of approximately 1½ years elapsed between the filing of the original action against Gregory and the time the default judgment was taken, during which time plaintiffs' attorneys and the defendant insurer were corresponding concerning the suit and its possible settlement. It further appears that during this time the garnishee-defendant at no time disclaimed liability under the policy although it knew that its insured had apparently never communicated with it regarding the law suit. The first time defendant disclaimed liability was in its let-

296

ter to plaintiffs' attorneys after having been advised that a default judgment had been taken against Gregory. A case involving similar facts was A-1 Cleaners & Dyers v. American Mut. Liability Ins. Co., 307 Ill. App. 64. Plaintiff's counsel in the A-1 case notified the defendant insurance company of the filing of the law suit and deferred entering a default for more than six months while negotiations for settlement were underway. The court there pointed out that it would be a harsh rule that would permit defendant to disclaim liability on the grounds of lack of notice of the law suit under such circumstances. In our view the same observation may be made with reference to this case where the plaintiffs delayed for a period of one and one-half years before taking default against the defendant. Meanwhile, following receipt by the garnishee-defendant of a letter from plaintiffs' attorneys advising that suit had been filed in the local circuit court the defendant, through its investigator, interviewed the plaintiffs and obtained a copy of the police report. Under the circumstances, we believe the defendant insurer not only received sufficient notice of the filing of the law suit, but thereafter with knowledge of the facts acted in such a manner as to negative any intention on its part to disclaim any liability on its policy because of breach of the condition regarding notice of suit.

██ The third affirmative defense relied upon by the garnishee-defendant relates to a claim of non-cooperation by its insured. The burden of proof is upon the garnishee-defendant to establish by a preponderance of the evidence the various affirmative defenses raised in its pleadings. Policies of the kind in controversy here do not stipulate against liability in every case of non-cooperation. It is only non-cooperation *after request by the insurer* which constitutes a policy defense to an insurance carrier. Thus, a liability policy requiring the insured at the insurer's request to as-

297

sist in the defense or to render cooperation in connection with the suit is not breached where the insurer makes no request that the insured do so (Latronica v. Royal Indemnity Co., 8 Ill.App.2d 337, 342), and this is so even though the whereabouts of the insured are unknown (Fulleylove v. Holmes, 237 N. W. 95, 205 Wis. 463, reh. den., 238 N. W. 289, 205 Wis. 463; Blashfield's Cyclopedia of Automobile Law and Practice, Part 20, Section 4059, page 83). It is incumbent upon the insurer in order to avail itself of this defense that it show its good faith in attempting to locate its insured (Durbin for the use of Ferdman v. Lord, 329 Ill. App. 333; Duffy v. Fort Dearborn Casualty Underwriters, 270 Ill. App. 143). In short, the question of cooperation involves not only the good faith of the insured but the good faith of the insurer as well.

The facts in the present case are somewhat unusual. Highway insists that a more flagrant case of non-cooperation could not be imagined. Nevertheless, the record here reveals significantly that there was some communication between the insured, Gregory, and Highway between the time of the accident and the filing of the original negligence suit. Highway changed the coverage to another vehicle by amendment dated May 28, 1954, and, in addition, the first letter from plaintiffs' attorneys to Highway clearly refers to receipt by plaintiffs or their counsel of a prior communication from Highway concerning this accident, including an assertion by Highway that the damaged tractor-trailer was owned not by Mr. Cusimano but a Fred Allen, Inc. This latter information had to come from someone other than plaintiffs and their attorneys, and if assumptions must be made, it can most fairly be assumed that this information came from Gregory or his insurance broker.

Moreover, the facts here conclusively show that Highway knew that their insured, Gregory, was al-

leged to have been involved in an automobile accident and that this knowledge came to its attention at least as early as May 6, 1954, some 22 days after the occurrence. On June 16, 1954, Highway admittedly knew that Gregory was in the Veterans Hospital at Hines, Illinois. Not until July 1, 1954, did Highway send its investigator to interview Gregory at which time it first sent him to Gregory's old address on South Indiana Avenue in Chicago, the address set forth in the policy of insurance, and then later to Hines Hospital. The first and only attempt to communicate with its insured by mail was made by Highway through its registered letter dated August 9, 1954, which was directed to Gregory at the South Indiana Avenue address, although the defendant then knew from its previous investigation of July 1, 1954, that the letter would never reach its insured. After plaintiffs' counsel, through investigators, uncovered that Gregory had moved to Gary, Indiana, to stay with his relatives, and after they had so informed Highway by letter dated June 24, 1955, Highway made no attempt to locate its insured in Gary, Indiana. True, Highway called plaintiffs' attorneys in an attempt to learn Gregory's exact address in Gary, but the record is otherwise devoid of any evidence indicating a genuine attempt on the part of Highway to locate its insured. The evidence does not indicate that Gregory was guilty of any collusion with the plaintiffs or any fraudulent conduct, nor that he was attempting wilful obstruction. From all that appears Gregory was suffering from some disability.

■ The office memoranda of Highway indicate that its claims personnel were not seriously concerned with locating its insured and that it proposed at various times to rely on such defenses as lack of negligence and invalid service of process. Highway's registered letter dated August 9, 1954, was but an idle gesture, as was its investigation. Highway did not prove, as

299

it contends, that its insured utterly failed to communicate with it following the accident or that it exercised reasonable diligence and good faith in trying to locate its insured and request his assistance and cooperation. Defendant was content to follow the course of conduct outlined in its office memorandum dated June 30, 1955, and await a garnishment which it hoped to defend successfully because of a possible defect in service of process.

As to the question of the affirmative defense of non-cooperation, the United States Court of Appeals for the Fourth Circuit in the case of Pennsylvania Threshermen and Farmers Mut. Casualty Ins. Co. v. Owens, 238 F.2d 549, 550, describes the duty of the insurer. The court in that case observed: "The problem of non-cooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure cooperation from an apathetic, inattentive, or vanished policyholder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. Indeed, such insurance is made mandatory in many states. It would greatly weaken the practical usefulness of policies designed to afford public protection if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him. See Tuder v. Commonwealth Casualty Co., 163 A. 27, 10 N. J. Misc. 1206."

The Illinois Supreme Court in Simmon v. Iowa Mut. Casualty Co., 3 Ill.2d 318, 322, expressed a similar view: "Automobile insurance has taken an important position in the modern world. It is no longer a private contract merely between two parties. The greater part of litigation in our trial courts is concerned with claims arising out of property damage, personal injury or death caused by operation of motor vehicles.

300

The legislatures of all our States have recognized the hazards and perils daily encountered and as a result have enacted various pieces of legislation aimed at the protection of the injured party. Financial Responsibility acts, Unsatisfied Judgment Fund acts, and other similar laws are direct results of this concern. That the general welfare is promoted by such laws can be little doubted. Government and the general public have an understandable interest in the problem. Many persons injured and disabled from automobile accidents would become public charges were it not for financial assistance received from the insurance companies."

We have examined all of the cases cited by the parties and, while it cannot be said that there is complete harmony among the decided cases, we believe that the decisions in the cases cited are decisive of the questions presented here. Finding no error in the record, the judgment of the Circuit Court of Will County is therefore affirmed.

Affirmed.

CROW and WRIGHT, JJ., concur.