484 A.2d 768

**PHILADELPHIA ELECTRIC COMPANY, Appellant,**

**v.**

**AETNA CASUALTY & SURETY CO.**

**and**

**McCLOSKEY & COMPANY**

**v.**

**ALEXANDER & ALEXANDER and Harry J. Watson.**

Superior Court of Pennsylvania.

Argued July 10, 1984.

Filed Oct. 5, 1984.

Reargument Denied Dec. 17, 1984.

Petition for Allowance of Appeal Denied May 14, 1985.

Joseph M. Donley, Philadelphia, for appellant.

E. Chandler Hosmer, III, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

## OPINION

OLSZEWSKI, Judge:

In this appeal we are called upon to determine whether the lower court erred in finding that the Philadelphia Electric Company's (PECO's) insurance claim was barred by its failure to properly notify its insurer, Aetna Casualty & Surety Company (Aetna), of the accident within a reasonable time.[1]  Since we have determined that Aetna was on notice of the accident shortly after its occurrence, we therefore reverse.

The rather long and complex factual background of the case reveals that in January of 1964, McCloskey & Company (McCloskey) entered into a contract with the Pennsylvania Department of Transportation (PennDot) to construct a certain segment of Interstate I-95.  Since a portion of the work to be performed involved PECO's facilities, PennDot required as a condition precedent to the contract, that McCloskey obtain liability insurance for and on behalf of PECO.

In order to fulfill this necessary requirement, McCloskey approached its regular insurance carrier, Aetna, and purchased a policy in which it and PECO were designated as the named insureds.[2]

Shortly after obtaining coverage, McCloskey began construction on the interstate.  On May 13, 1966, Herman Love, an employee of McCloskey, was severly injured when his jackhammer struck an underground conduit owned by PECO.  As a result of this mishap, Mr. Love promptly instituted a worker's compensation claim with Aetna, McCloskey's worker's compensation carrier.

---

**1.** The pertinent notice provision we must now construe provided: "Notice of Accident—when an accident occurs written notice shall be given by *or on behalf of* the insured to the company or any of its authorized agents *as soon as practicable*." (Emphasis added.)

**2.** McCloskey purchased a manufacturer's and contractor's liability policy insuring PECO, among other things, against all losses PECO might incur during the policy period up to a limit of $500,000 for all damages arising out of bodily injury to any one person.  This policy also provided coverage for McCloskey for injuries that may have arisen throughout the period of construction.

While this worker's compensation action was pending, Mr. Love also filed a personal injury action against PECO for damages sustained from the same mishap. At that time, PECO, unaware of the existence of the McCloskey-Aetna policy, did not notify Aetna of its responsibility to assume the defense of the matter. However, PECO did join McCloskey as a third-party defendant claiming indemnity for any damages owed Mr. Love on account of the accident. McCloskey thereafter promptly notified Aetna to defend the matter in its behalf pursuant to the McCloskey-Aetna policy.

Shortly before the trial was set to commence, PECO's claim department discovered that Aetna was responsible under the McCloskey-Aetna policy to defend the Love personal injury action in its behalf. In January, 1975, PECO therefore served a written notice requesting representation. Aetna refused to defend or accept any of the liability flowing from the accident, stating that PECO breached the insurance contract by failing to provide Aetna with timely notice of the accident.

In May of 1975, the Love trial was held after which judgment was entered solely against PECO in the amount of $250,000. Nearly two years later, PECO instituted an assumpsit action against Aetna alleging that Aetna breached its duty under the McCloskey-Aetna policy by not defending the Love matter on its behalf. PECO urged the court to order Aetna to indemnify it for the $250,000 Love judgment. The lower court, per Honorable Paul M. Chalfin, J., however refused PECO's request on the theory that PECO's late notice relieved Aetna of all responsibility under the policy. In his opinion, Judge Chalfin refused to find that Aetna was on constructive notice of the accident despite the fact that Aetna had participated in the third-party indemnity action against PECO.[3] The court subsequently

---

3. The lower court also refused to hold that Mr. Love's worker's compensation claim was sufficient to notify Aetna of its responsibility to defend PECO. It is important to note that both actions Aetna was called upon to defend on behalf of McCloskey arose out of same jackhammer tragedy which formed the basis of this appeal.

entered its findings and judgment in favor of Aetna and against PECO.

After exceptions were dismissed, this appeal followed in which PECO argues that the lower court erred in refusing to find Aetna in constructive notice of the accident when Aetna had in fact: (1) handled the McCloskey-Love worker's compensation claim, and (2) been notified of the accident when it was called upon to represent McCloskey in the PECO-Love personal injury suit.

## I.

At the outset, we note that past decisions have clearly upheld the validity of a provision in an insurance policy requiring written notice of an accident to be given "as soon as practicable". *See Meierdierck v. Miller*, 394 Pa. 484, 147 A.2d 406 (1959). At one time, such provisions were strictly enforced by our courts and late notice automatically relieved the insurance company from its contractual responsibility, even when the late notice did not harm the insurance company in any way. *Meierdierck v. Miller, supra.*

However, that approach was rejected in *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193, 196 (1977), when our Supreme Court adopted a two-prong test under which late notice will only relieve an insurer from its duty if the insurer can establish by a preponderance of the evidence that: (1) it never received the required notice of the accident, and (2) as a result of this, its economic interests were unduly prejudiced.

In construing prong-one of *Brakeman,* our courts have never faced the issue of whether or not indirect notice is sufficient to alert a potentially liable insurer of its duty to defend a matter on behalf of its insured. However, this issue has been litigated and well documented in several other jurisdictions, with the general consensus being that notice of the accident need not come directly from the insured to effectively alert the insurer of its duty to de-

fend.[4] *See Duggan v. Travelers Indemnity Company*, 383 F.2d 871 (1st Cir.1967); *Aetna Casualty & Surety Co. v. Samson*, 471 F.Supp. 1041 (Colo.1979); *Liberty Mutual Insurance Co. v. Haecker Industries, Inc.*, 326 F.Supp. 489 (1971); *Gregory v. Highway Insurance Company*, 24 Ill. App.2d 285, 164 N.E.2d 297 (1960); *Sinclair Oil Company v. New Hampshire Insurance Company*, 107 R.I. 469, 268 A.2d 281 (1970); *Helvy v. Inland Mutual Insurance Company*, 148 W.Va. 51, 132 S.E.2d 912 (1963).[5]

Inherent throughout these opinions is the common thread that the requirement of notice will be satisfied as long as the insured is reasonably alerted, either directly or indirectly, of the accident prior to the pendency of the suit. *Sinclair Oil Company v. New Hampshire Insurance Company, supra.* (test is whether liability insurer was sufficiently informed of the occurrence of the accident within a reasonable time depending on the circumstances of each particular case); *see also Gregory v. Highway Insurance Co., supra.* (it does not matter who gives the notice as long as notice is given of the occurrence of the accident or the pendency of the suit.)[6]

With the two-prong test of *Brakeman* and the above principles in mind, we must now determine whether the lower court erred in concluding that Aetna was not directly or indirectly informed of the accident within a reasonable time of its occurrence.

■ Turning our attention to the pertinent notice provision in the policy, we see that it was rather ambiguous on

4. Indeed, our own courts have held that it is immaterial under an automobile liability insurance policy, whether the named insured, an additional insured, or any other person involved, notifies the insurance company of the accident. *See Bethlehem Steel Company v. Continental Casualty Co.*, 208 F.Supp. 354 (1958); *Frank v. Nash*, 166 Pa.Super. 476, 71 A.2d 835 (1950); *Morris v. Bender*, 317 Pa. 533, 177 A. 776 (1935). We find the logic in these cases quite persuasive.

5. While we recognize the factual difference between these cases and that before us, we deem the thrust of these cases—that notice from sources *other than* the insured will suffice—as consistent with our stand here.

6. Our research has also revealed that most courts are moving to the position that substantial compliance with notice requirements is all that is required to reasonably put the insurer on notice of an accident. *See Moss v. Cincinnati Ins. Co.*, 154 Ga.App. 165, 268 S.E.2d 676 (1980); *Hanover Ins. Co. v. Hagler*, 532 S.W.2d 136 (Tex.Civ.App.1975); *Fishel v. Yorktowne Mutual Ins. Co.*, 254 Pa.Super. 136, 385 A.2d 562 (1978).

the issue of whom was responsible for notifying Aetna of an accident. In this respect, the policy merely stated that "... written notice shall be given by *or on behalf of the insured* ... as soon as practicable." (Emphasis added.) We believe the parties intended the phrase "or on behalf of the insured" to mean that notice of the accident from "any reliable source" is all that was required to trigger Aetna's responsibility under the policy.[7]

Since we have determined that notice from any reliable source would be sufficient we must now determine whether Aetna was in fact notified of the Love accident by a reliable source.

■ In this respect, the record reveals that Aetna first became aware of the accident as early as May of 1966 when it represented McCloskey in the worker's compensation claim. This claim, which arose out of the same mishap as the present controversy, would seem to be sufficient to notify Aetna of the accident and its impending duty to PECO. However, as the lower courts opinion correctly points out, the investigation conducted by Aetna pursuant to that claim was materially different from the type of investigation Aetna would have conducted in preparation for this personal liability defense. Therefore, we cannot say that this worker's compensation claim, in and of itself, alerted Aetna of its potential responsibility.

A further examination of the record reveals, however, that in November of 1966, Aetna was again alerted to the circumstances surrounding Mr. Love's accident when it was joined by McCloskey to defend a third-party indemnity claim by PECO, in the personal injury suit instituted by Mr. Love. In defending McCloskey in this action, Aetna was confronted with the same policy under which PECO had also been designated as one of the named beneficiaries. Furthermore, the notice McCloskey provided Aetna included a rath-

---

7. Our power to construe any ambiguities or inconsistencies against the drafter of a policy is unquestionable. *See Filaseta v. Pennsylvania T & FM Insurance Company,* 209 Pa.Super. 322, 228 A.2d 18 (1967). Here, Aetna drafted the notice of accident provision. We have therefore construed any ambiguities against it.

er detailed explanation of PECO's involvement in the matter.

■■■ We are convinced that McCloskey's notice of the accident,[8] in combination with the notice Aetna received under the worker's compensation claim, were sufficient to notify Aetna of its responsibility to defend PECO in the personal injury action.[9] We therefore hold that Aetna has not met its burden of establishing that PECO breached the notice provision contained within the McCloskey-Aetna policy and the lower court erred in so holding.

## II.

Before concluding, we just want to emphasize that we are not unmindful of the economic hardship our present holding might have upon the interests of Aetna. At the same time, however, we are also reluctant to allow an insurer to refuse to provide that which it has been fully paid for unless it is *perfectly clear* that it was not given actual or constructive notice of the claim confronting it.

Since we have concluded from the rather unique factual situation presented that Aetna was indirectly notified of its duty to defend PECO in the personal injury action, we therefore hold that the lower court erred in finding PECO in breach of the notice provision of the policy.[10]

---

**8.** Since McCloskey purchased the policy in which PECO was one of the named insureds, we also believe that it was a "reliable source" who could adequately provide notice of the accident on behalf of PECO.

**9.** We are fully aware that notice under a worker's compensation claim is not, in and of itself, sufficient to provide adequate notice under a liability policy in a case such as this. However, our instant holding is not premised entirely on the notice Aetna received under the worker's compensation claim. Rather, we have determined that the notice Aetna received by way of the PECO-Love personal injury suit, together with the worker's compensation notice, are sufficient when combined to demonstrate that reasonable notice of the accident was clearly afforded.

**10.** Our instant holding makes it unnecessary to determine whether Aetna also met its burden of proving that it was unduly prejudiced by the lack of adequate notice.

■ Accordingly, we must now reverse the order entered below.[11]

Order reversed.

WIEAND, J., concurs in the result.

**11.** We want to emphasize that our instant decision should not be construed too broadly. We do not in any manner mean to suggest that constructive notice will be found in all future cases. Rather, the determination of whether an insurer was indirectly notified of an accident must, as here, be determined on a case by case approach, taking into consideration the particular factual situation presented by the respective parties.