Stephen R. BOLDEN, Daniel B. Michie, Jr., Joseph S. Moloznik, and Warren S. Spalding, Plaintiffs,

v.

NIAGARA FIRE INSURANCE CO., Defendant.

Civ. A. No. 92–5141.

United States District Court, E.D. Pennsylvania.

Feb. 9, 1993.

a necessary party, pursuant to Fed.R.Civ.P. 19(a). Because the court agrees that plaintiffs have failed to state a claim upon which relief can be granted, it will dismiss the action and therefore need not consider joining The Home Insurance Company as a party.

## I. BACKGROUND

■ At issue is whether the responsibilities of the defendant insurer have been triggered under a one-year lawyer's professional liability insurance policy No. LPL–3701954, issued to Fell & Spalding, P.C., effective June 10, 1983 (the "F & S policy"). The plaintiffs are all partners of, or of counsel to, Fell & Spalding, which was formerly Fell & Spalding, P.C. The policy is a "claims made" policy, as opposed to an "occurrence" policy, which means that it protects the policy holder against claims made during the life of the policy, rather than against "occurrences" which happen during the policy period and for which claims may arise later. *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343, 1347 n. 2 (E.D.Pa.1985), *citing St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2927 n. 3, 57 L.Ed.2d 932 (1978).

There is no dispute that responsibilities of the defendant insurer were triggered under a separate Niagara policy, a malpractice policy, No. LPL–3701941, issued by defendant to the law firm of Rubin, Quinn & Moss, (the "RQ & M policy") by the same communication which plaintiffs claim triggered their policy. To understand why the plaintiffs allege that a communication about a possible claim under the RQ & M policy triggered defendant's responsibility under the F & S policy, it is necessary to understand something about the history of the two firms and of claims made against some of their partners and associates.

The named plaintiffs were all formerly partners in the law firm of Fell, Spalding, Goff & Rubin ("FSG & R"), which disbanded on April 1, 1982. Two firms were formed from FSG & R: Rubin, Quinn, Moss & Girard–deCarlo, which became Rubin, Quinn & Moss ("RQ & M") on or about April 19, 1983, and Fell & Spalding, P.C., which became Fell

Joseph A. Venuti, Jr., Swartz, Campbell & Detweiler, Philadelphia, PA, for plaintiffs.

Edward C. Mengel, Jr., White and Williams, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Now before the court is a motion by defendant Niagara Fire Insurance Company to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiffs have failed to state a claim upon which relief can be granted. In the alternative, defendant requests that the court join The Home Insurance Company as a party to this action as the real party in interest, pursuant to Fed.R.Civ.P. 17(a) or as

& Spalding ("F & S") on or about July 1, 1983. Plaintiffs Stephen R. Bolden, Daniel B. Michie, Jr. and Joseph S. Moloznik became partners of, and plaintiff Warren S. Spalding became of counsel to, Fell & Spalding, P.C., and later, Fell & Spalding. Another attorney important to understanding this action, although not a party, is Nicholas Scafidi, who was an associate of FSG & R before it disbanded. He later joined the form of RQ & M.

In September 1979, when FSG & R was in existence, that firm and Nicholas Scafidi, who was an associate with the firm, agreed to represent Tamara Mallace and her parents ("the Mallaces") in an action against Children's Hospital because of injuries sustained by Tamara during events leading up to, during, and after her birth on November 8, 1978. In 1981, Scafidi brought a lawsuit against Children's Hospital, but it was discontinued when Scafidi's medical experts advised him that negligence could not be attributed to Children's Hospital.

The Mallaces then hired Jerome Gamburg to replace Scafidi. Gamburg brought an action on their behalf against Pennsylvania Hospital, where Tamara was born, and Dr. Harvey Duchin on or about June 20, 1983. He also allegedly advised Scafidi, who was then with RQ & M, that if the Mallaces' medical malpractice claim against Pennsylvania Hospital and Dr. Duchin was found to be barred by the statute of limitation, he would bring a legal malpractice action against the responsible parties. At that time, RQ & M held claims-made malpractice insurance with Niagara under policy No. LPL–3701941.

Scafidi wrote a letter dated June 28, 1983, which was received by Niagara's authorized agent, Bertholon–Rowland Agencies. In it, Scafidi notified Niagara on RQ & M letterhead that a claim was likely to be made against "this firm." It went on to explain that, in 1981, *"this firm* filed suit against Children's Hospital on behalf of [the Mallaces]...." and reported that "the Mallace's present attorney has informed us that should

Pennsylvania Hospital succeed in barring suit because of the statute of limitations, he would then consider liability of *this firm* in not commencing suit against Pennsylvania Hospital in timely fashion." He ended by saying, "At present, no suit has been filed against *this firm*." Complaint, Appendix D (emphases added).

The Mallaces did sue Nicholas Scafidi and RQ & M in separate actions in 1983. Complaint, Exhibits F and G. The suit that Jerome Gamburg had filed against Pennsylvania Hospital and Dr. Duchin had not yet been decided; the action against Scafidi was dismissed without prejudice as premature, while the one against RQ & M was discontinued by stipulation. *Id.* At that time, no action had been filed against the plaintiffs in this suit, and "[n]either Scafidi nor Gamburg or anyone else gave notice to plaintiffs about the Mallaces' potential legal malpractice claim." Complaint at ¶ 27. It was not until after the Mallace's suit against Pennsylvania Hospital and Dr. Duchin had been dismissed as time-barred in 1986 that the Mallaces resumed their actions against their former attorneys. They then initiated two actions, one in 1986 against Scafidi and one in 1987 against the plaintiffs and other former partners of FSG & R. Complaint, Exhibits J and K.

In 1990, plaintiffs, Scafidi, and other former FSG & R partners settled the malpractice actions brought against them by the Mallaces for $3,300,000. Niagara paid nearly $2,000,000 of that amount under the RQ & M policy, No. LPL–3701941. That policy was triggered by the 1983 letter that Scafidi had sent to Niagara's agent, warning of a possible future claim against "this firm". Plaintiffs contend that, in addition, Niagara should reimburse them for the remaining $1,340,000 that they were obliged to pay.[1] Their position is that the S & F policy, No. LPL–3701954, was also triggered by Scafidi's letter to Niagara's agent.

---

1. Plaintiffs actually paid only about $10,000 of their own money on the claim; this was the deductible amount under their agreement with The Home Insurance Company. The rest was paid by that company under a loan agreement which requires plaintiffs to pay back the loan only if they succeed in collecting the money from Niagara. Plaintiff's Response, Appendix 2.

Plaintiffs say in their complaint that, although Scafidi's 1983 letter was on RQ & M letter head,

> Niagara knew or should have known that "this firm", in 1981, referred to by Scafidi in this letter was FSG & R, not Rubin, Quinn & Moss, which did not come into existence until 1983, and knew or should have known that plaintiffs were partners in FSG & R in 1981 as the predecessor to Fell & Spalding, P.C., and Rubin, Quinn & Moss, and, as a result, were potentially exposed to liability, ...

> Niagara also knew or should have known on or about June 28, 1983, that all partners and/or employers of Scafidi at the time of the alleged act or omission in 1981 were exposed to liability thereby and further knew or should have known the identities of those partners and employers because they were insureds of Niagara.

Plaintiffs' Complaint at ¶ 28, 29.

Once Niagara received the first notice of a claim from Scafidi, on RQ & M letterhead, referring to the potential liability of "this firm," plaintiffs charge that defendant had a duty to trace Scafidi back to the date of alleged incident in 1981, identify the firm to which he then belonged, identify other members of that firm at that time, and trace those members forward to their new firms in 1983 to see if they were covered by other claims-made insurance policies that Niagara had issued to their new firms. Niagara does not dispute that it had the information in its files to make such an investigation. It argues that it had no duty to so. It claims that under the S & F policy, the responsibility for notification lay with the plaintiffs.[2]

## II. THE F & S INSURANCE POLICY

The relevant portions of the F & S policy issued by Niagara for 1983 are as follows:

> "Claim" means, whenever used in this policy, a demand received by the insured for money or services including the service of suit or institution of arbitration proceedings against the insured;

> A claim is first made against the insured during the policy period ... if:

> (a) *during the policy period ... the insured shall have knowledge or become aware of any act or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period ... give written notice thereof to the Company in accordance with Condition VII or*

> (b) during the policy period ... a claim alleges damages which are payable under this policy.

> A claim shall be considered to be reported to the Company when the Company, or its authorized agent, first receives written notice of the claim or of an event which could reasonably be expected to give rise to a claim.

> If a claim has been first made against the insured and reported to the Company during a policy period, any claim which is subsequently reported and which arises from the same or related acts or omissions as form a basis of the claim first made against the insured shall be considered part of the claim which was first made against the insured and reported to the Company during the policy year.

> *Upon the insured becoming aware of any act or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the insured* to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative. If during the policy period or the extended reporting period, the Company shall be given written notice of any act or omission which could

---

**2.** In their reply memorandum, plaintiffs changed their position and claimed that defendant would not have had to do any investigation, that it already "knew" that plaintiffs were covered under another policy issued by defendant for a possible claim by the Mallaces. However, plaintiffs offer no evidence in support of this position and Scafidi's letter provides no support. On the basis of their complaint, the most plaintiffs can say is that defendant had in its files the information necessary to trace the connection, if it undertook to do so.

reasonably be expected to give rise to a claim or suit against the insured under this policy, any claim which subsequently arises out of the same or related professional services as a claim already made and reported to the Company, all such claims, whenever made, shall be considered first made and reported within the policy period or extended reporting period in which the earliest claim arising out of such professional services was first made and reported and all such claims shall be subject to the same limit of liability.

Plaintiff's Complaint, Appendix A (emphases added). Condition VII, to which section (a) refers, states that notification of the suit must be given "by or on behalf of" the insured, as does the last paragraph quoted above. Defendant Niagara Fire Insurance Company's Memorandum of Law in Support of Motion to Dismiss ("Defendant's Memo") at 11.

### III. DISCUSSION

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all factual allegations set forth in the complaint and all inferences that can be reasonably drawn from them must be taken as true. *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir.1988); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943 (3d Cir.1984). A dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Plaintiffs have asserted that, under Pennsylvania choice of law rules, Pennsylvania law applies to their breach of contract action that defendant has moved to dismiss, and defendants do not disagree.

There can be no question that no claim was made against the plaintiffs under the S & F policy during the policy period. Nor did they give notice during the policy period of circumstances that might give rise to a claim. They could not give such notice because, as their complaint states, they themselves had not, at the time, been notified of any possible action against themselves.

Plaintiff's Complaint at ¶ 27. Plaintiff's contention must therefore be that Scafidi's letter gave Niagara notice "on behalf of" the insured under the S & F policy.

The problem with this reasoning is that, under the clear terms of the policy, as quoted above, the awareness of the insured must trigger the notification. That is one of the requirements of this claims-made policy. If the insured, S & F, did not become aware of a claim, or circumstances that may lead to a claim, during the policy period, and plaintiffs admits it did not, then it could not initiate notification of the insurance company so as to trigger the policy.

Plaintiffs cite *Philadelphia Electric Co. v. Aetna Casualty & Surety Co.*, 335 Pa.Super. 410, 484 A.2d 768 (1984), which held that the insurance company had been informed of an accident indirectly within a reasonable time of its occurrence and that coverage was therefore triggered. In that case, a contractor, McCloskey & Co. ("McCloskey") entered into a contract with the Pennsylvania Department of Transportation to construct a segment of Interstate I–95. A condition precedent to the contract was that McCloskey obtain liability insurance for and on behalf of Philadelphia Electric Co. ("PECO"). McCloskey obtained the required insurance with Aetna Casualty & Surety Company ("Aetna"), its worker's compensation carrier.

A worker who was injured during the construction project instituted a worker's compensation claim against McCloskey and a personal injury action against PECO for damages sustained in the same mishap. PECO was unaware of the Aetna policy that McCloskey had taken out on its behalf, but it did join McCloskey as a third-party defendant, claiming indemnity for any damages it might owe on account of the accident. Shortly before trial started, PECO discovered that Aetna had the duty to defend PECO in the suit under the policy that McCloskey had taken out on its behalf and requested representation. Aetna refused, claiming that PECO had breached the insurance contract by failing to provide Aetna with timely notice of the accident.

PECO argued that Aetna was alerted to its responsibilities because it already knew of two claims that arose out of the same accident, the worker's compensation claim and claim by McCloskey for representation as a third party in the personal injury suit by the worker. The court decided that the worker's compensation claim was not, in itself, sufficient to alert Aetna to its responsibilities to defend PECO. Nevertheless, it held that Aetna did have adequate notice because Aetna was alerted by McCloskey both to the accident and to the policy in question. When PECO joined McCloskey in the worker's personal injury suit against it, McCloskey asked Aetna to defend the third-party indemnity claim against it by PECO. In defending McCloskey in this action, Aetna was not only given notice of the accident, but "was confronted with the same policy under which PECO had been designated as one of the named beneficiaries. Furthermore, the notice McCloskey provided Aetna included a rather detailed explanation of PECO's involvement in the matter." *Id.* at 772. Finding also that the contract did not require that PECO itself give notice to Aetna, but that notice could come from "any reasonable source", the court concluded that McCloskey's communication to Aetna provided adequate notice for PECO and that PECO had therefore not breached the notice provision of the contract.

Plaintiffs assert that *Philadelphia Electric* has decided the very issue that they present, but they fail to appreciate critical factual differences in the two cases. First, McCloskey gave notice to Aetna with regard to the *same policy* under which PECO was a named insured, and even explained PECO's role in the matter. In the case before us, notice was given under a different policy, and no reference was made to the plaintiffs or to the policy that covered them. The court does not accept plaintiffs' contention that defendant had a duty to conduct an investigation and make the connection, or their later, revised contention that defendant "knew" without investigating, upon receipt of Scafidi's letter, that it covered plaintiffs for the same potential claim mentioned by Scafidi.

Second, the notice provision in the PECO policy did not include the provision that the S & F policy did concerning the awareness of the insured that a claim might be filed. In the clear language of the S & F claims-made policy, during the policy period there either had to be a claim, of which the insured had to notify Niagara, or, alternatively, S & F had to become aware of circumstances that might lead to a claim, and written notice of the circumstances had to be given to Niagara by or on behalf of S & F. Neither of these conditions was met.

■ Plaintiffs note that, in *Philadelphia Electric*, the Superior Court of Pennsylvania acknowledged the majority rule permitting indirect notice as sufficient to require an insurer to defend an insured in a matter, but that is not the issue here. If the plaintiffs had become aware of a possible claim against them, and had effected indirect notice by seeing that Scafidi informed Niagara in his 1983 letter that a claim against S & F might be made under their policy with Niagara, then effective notice would have been given to the insurer.[3] But plaintiffs were not aware of a claim and Scafidi did not refer to a possible claim against S & F under S & F's policy issued by Niagara.

Plaintiffs, in their initial memorandum of law in response to defendant's motion and in their response to defendants reply memorandum, contend that the wording of Scafidi's letter of June 28, 1983, to Niagara's representative, did give notice on behalf of the plaintiffs of a potential claim against them. In the letter, Scafidi advised Niagara of a potential legal malpractice claim against him and "this firm" arising from a lawsuit in 1981 which "this firm" filed. Plaintiffs claim that it is clear that Niagara knew that Scafidi did not mean the firm on whose letterhead he wrote when he said "this firm" filed a law suit in 1981 because it knew that in 1981 Scafidi was a partner in another law firm, FSG & R. Plaintiffs charge Niagara with this knowledge because it had requested the

---

**3.** The court need not consider whether notice would have been effective if Scafidi's letter did mention a potential claim against S & F under its policy but plaintiffs were still unaware of such a possibility.

information about individuals' prior law firms in its application and supplemental claim information forms. Furthermore, Niagara recognized in its policy that a successor firm was responsible for the acts or omissions of a predecessor firm. Plaintiffs further argue that Scafidi, on behalf of himself and "this firm," FSG & R, gave notice of a potential claim as defined under the insurance policy issued to S & F.

Because a successor firm was responsible for the acts or omissions of a predecessor firm under the policy, "this firm" in Scafidi's letter might have applied either to the predecessor, FSG & R, or to the successor firm, RQ & M, or to both. Indeed, Scafidi seemed to apply the term to both interchangeably. The one firm to which Scafidi appears to have made no reference is S & F. The court finds that it is stretching matters beyond reasonable bounds to conclude that Scafidi's inconsistent use of the term "this firm" in a way that might apply both to FSG & R and RQ & M in his letter of notice on RQ & M letterhead concerning RQ & M's policy with Niagara gave Niagara notice of a possible claim under another policy issued to another firm by Niagara. The court holds that Scafidi's 1983 letter to Niagara's representative giving notice of a possible claim against RQ & M under its claims-made policy with Niagara did not give notice of a possible claim against S & F under its claims-made policy with Niagara. Nor did Scafidi's letter trigger a duty on Niagara's part to trace Scafidi's past legal associates and their present firms to see if it held policies covering them.

## IV. CONCLUSION

Under the terms of the claims-made policy issued to S & F for 1983, because the insured became aware of no present or possible future claims against it during the policy period, and no notice was given by or on behalf of the firm of a potential claim under its policy, the policy was not triggered. An appropriate order follows.

## ORDER

AND NOW, this 9th day of February, 1993, upon consideration of defendant, Niagara Fire Insurance Company's motion to dismiss, and plaintiffs' response thereto, and the briefs submitted by both sides, it is hereby ORDERED that defendant's motion to dismiss is GRANTED and that plaintiffs' Complaint is DISMISSED with prejudice.

IT IS FURTHER ORDERED that defendant's motion to join Home Insurance Company as a party is DENIED AS MOOT.