**WESTERN FREIGHT ASSOCIATION, a corporation, Plaintiff,**

v.

**AETNA CASUALTY & SURETY COMPANY, a corporation, Defendant.**

Bernard ZANDIER, Plaintiff,

v.

**AETNA CASUALTY & SURETY COMPANY, a corporation, Defendant.**

Civ. A. Nos. 64-809, 64-930.

United States District Court
W. D. Pennsylvania.

June 24, 1966.

Robert S. Grigsby, of Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for plaintiff Western Freight Ass'n.

Stuart E. Savage, Pittsburgh, Pa., for plaintiff Bernard Zandier.

James F. Manley, of Burns & Manley, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

These consolidated actions, involving a comprehensive liability policy issued by the defendant, Aetna Casualty & Surety Company (Aetna), were tried to the court. The plaintiffs assert that they were insureds under the omnibus clause of the policy and contractually entitled to the protection of its coverage. The plaintiffs also assert that the defendant breached the contractual obligations of the policy by failing to defend a negligence action brought by Bernard Niedbalski against the plaintiff, Western Freight Association (Western), in which Bernard Zandier was joined as a third-party defendant, and by failing to indemnify them for the fair and reasonable settlement of that suit and for reasonable legal fees incurred in defending and settling the suit, plus interest.

The court adopts the facts stipulated by the parties.

The facts show diversity of citizenship and the requisite jurisdictional amounts in each case. The court has jurisdiction of the parties and the subject matter.

The negligence action brought by Niedbalski was settled for $32,250. Pursuant thereto Western paid $21,500 and Zandier paid $10,750 to Niedbalski. The legal fees of Western and Zandier were $1,185.-95 and $1,000, respectively. The parties stipulated that all these amounts were fair and reasonable.

Niedbalski was employed as a truck driver by Lightning Express, Inc. (Lightning). Lightning was the named insured under the policy issued by Aetna.

On November 16, 1961, Niedbalski drove a tractor-trailer owned by Lightning to Western's unloading dock in Pittsburgh. This tractor-trailer was among the vehicles insured in the Aetna policy. The trailer carried a load of banded bundles of heavy pipe. Niedbalski backed the trailer against the dock for unloading. Zandier and Whigham, employees of Western, together with Niedbalski, proceeded to remove the bundles of pipe from the trailer with the aid of a fork-lift owned by Western. Zandier operated the fork-lift. Three of the bundles were unloaded and placed in a nearby boxcar without incident. In attempting to remove a fourth bundle from the trailer, Zandier inserted the prongs of the fork-lift into the openings of the pipe; he raised the pipe slightly from the bed of the trailer; the heavy pipe caused the rear wheels of the fork-lift to raise up; Niedbalski and Whigham took positions on the rear end of the fork-lift in an effort to counterbalance the weight of the pipe and lower the rear wheels of the lift to the dock. Zandier proceeded to withdraw the pipe from the trailer by driving the lift backward. Zandier testified that the ends of the pipe bumped on the bed of the trailer as the bundle was being withdrawn (deposition of Zandier, p. 19, et seq.). During the process the pipe suddenly slid off the prongs and the fork-lift sped backward and crashed into the side of the boxcar, causing serious injuries to Niedbalski.

The defendant's policy provides:

"The unqualified word 'Insured' includes the named Insured and also includes * * * under * * * [Coverage] A * * * any person or

organization legally responsible for the use thereof, provided the actual use of the automobile is by the named Insured or with his permission * * *."

"Use of an automobile includes the loading and unloading thereof."

"Coverage A:
" * * *

"Bodily Injury Liability—Automobile

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."

"Defense, Settlement, Supplementary Payments

"With respect to such insurance as is afforded by this policy, the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient * * *."

We conclude that both Zandier and his employer, Western, acquired the status of insureds under the terms of the policy; that Aetna was obligated by the terms thereof to defend them in Niedbalski's negligence suit or settle his claim; and, failing to do so, Aetna now owes them indemnification for the reasonable amounts paid Niedbalski and the legal fees with interest.

■ We find from the facts that Zandier, Whigham, and Niedbalski, in the course of their respective employments, were engaged in unloading Lightning's trailer, Zandier and Whigham being so engaged with Niedbalski's permission, and that the bodily injury to Niedbalski arose out of the unloading, which was a "use" of the insured vehicle within the meaning of Aetna's policy.

There was a definite connection between the accident and the use of the in-sured trailer in that the three men were directly engaged in attempting to unload the pipe from the trailer. The accident happened while they were attempting to accomplish this purpose. The unloading movement, which consisted of withdrawing the pipe from the bed of the trailer, had not ceased when the accident occurred. Wheeler v. London Guarantee & Accident Co., 292 Pa. 156, 140 A. 855 (1928). Cf. Federal Insurance Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (3d Cir. 1960); Ferry v. Protective Indemnity Co. of New York, 155 Pa. Super. 266, 38 A.2d 493 (1944); Clark v. United Steel Barrel Co., 7 Pa.Dist. & Co.2d 209 (1956). In the *Wheeler* case, the beam had actually been unloaded from the truck and was resting on the ground, but had not been delivered to its ultimate destination inside a building. While it lay on the ground, a boy stepped on the beam, and it toppled over injuring his foot. Where, as in the case at bar, the accident occurs as a consequence of efforts to unload the insured vehicle, there would appear to be an even closer connection between the "use" of the insured vehicle and the accident than the facts in *Wheeler* disclose. The facts in the case at bar also appear to establish such a connection with greater definiteness than do the facts in Clark v. United Steel Barrel Co., supra. In the *Clark* case, a container of acid had already been removed from the truck and placed in the middle of a pallet situated on the tines of a fork-lift. The accident happened when the plaintiff then attempted to move the container to one side of the pallet. The pallet was not properly secured; it tipped over and the container fell causing the plaintiff's injury. In the case at bar, while the pipe was also on the tines of the fork-lift, the men were still engaged in unloading it from the trailer when the accident happened,—the movement of unloading had not stopped.

■ Aetna's request for admissions served under Rule 36(a), Fed.R.Civ.P., are deemed admitted by Zandier's failure to reply within the ten-day time limit provided in that rule. These admissions

concerning the use of Lightning's vehicle and the fork-lift are not inconsistent with the facts and as evidence are not conclusive in themselves. They cannot affect the foregoing conclusion of law that the unloading of the insured trailer constituted a use thereof within the meaning of Aetna's policy.[1] Cf. Ark-Tenn Distributing Corp. v. Breidt, 209 F.2d 359, 360 (3d Cir. 1954); Pittsburgh Hotels Ass'n v. Urban Redevelop. Auth., 29 F.R.D. 512 (W.D.Pa.1962).

■ Aetna maintains that if the plaintiffs are found to qualify as insureds under its policy, nonetheless, they are barred from recovery by the following exclusionary clause:

"This policy does not apply:

"* * * (c) under Coverage A, to bodily injury to * * * any employee of the Insured arising out of and in the course of (1) domestic employment by the Insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law * * *."

The short answer is that the injured Niedbalski was not an employee of the two additional insureds, Western and Zandier, and therefore not entitled to benefits from them under any workmen's compensation law. Hence, the exclusionary clause does not apply. Gulf Insurance Co. v. Mack Warehouse Corporation, 212 F.Supp. 39 (E.D.Pa.1962); Bethlehem Steel Company v. Continental Casualty Co., 208 F.Supp. 356 (E.D.Pa. 1958); Ginder v. Harleysville Mutual Casualty Co., 49 F.Supp. 745 (E.D.Pa.1942), aff'd 135 F.2d 215 (3d Cir. 1943); Clark v. United Steel Barrel Co., supra; Walls, to use of, v. Gaines, et al., 46 Pa.Dist. & Co.R. 327 (1940).

■ The exclusionary clause would apply if Lightning, the named insured, had been sued by its employee Niedbalski, who was entitled to workmen's compensation. But in the case at bar Niedbalski sued insureds who were not his employers. If the unqualified word "Insured" as used in the exclusionary clause is ambiguous, the ambiguity under the general principle should be resolved against the insurer who drafted the policy and in favor of the additional insureds. As pointed out by Judge Freedman in Gulf Insurance Co. v. Mack Warehouse Corporation, supra, it would have been a simple matter for the insurer to have excluded coverage for any employee of *any* insured. Such exclusion would have precluded coverage under the policy for Niedbalski's injuries.

■ Aetna maintains that the plaintiffs are estopped to assert rights under the policy because each failed to give Aetna timely notice of the accident as required by the following condition:

"7. Notice of Accident—When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

This condition was fully met on behalf of both Western and Zandier on November 17th, one day after the accident, when Aetna received a written report from Lightning, the named insured. This report was in substantial compliance with Condition 7. At the time of an accident, only the named insured knows for certain the name of the insurance company with whom it contracted for liability insurance and the terms and conditions of the policy.[2] From the report received from

---

1. Counsel for Aetna agreed at a pretrial conference, when the case was listed for jury trial, that there were no factual issues for a jury to decide but only "conclusions from those facts" were in dispute (Tr. of pretrial conference, pp. 23–24). The material facts were subsequently stipulated for the conclusions of the court on the law.

2. It does not appear when Western and Zandier first learned that Aetna had issued a comprehensive liability policy to Lightning.

Lightning, Aetna was in a position to determine who had the status of insureds under the omnibus clause and therefore on whose behalf notice should be deemed to have been given. In fact, Aetna did treat the Lightning report as notice of possible exposure to coverage for Western and Zandier under the unloading clause. Although a workmen's compensation and employer's liability policy had been issued by Aetna to Lightning, and a file opened under that policy for Niedbalski's injuries, Aetna opened up and maintained a separate file relating to possible claims by Western and Zandier under the comprehensive liability policy. In addition, Aetna set up a reserve of $20,000 against such possible "exposure" on or about March 19, 1962, which was subsequently raised to $35,000 on or about August 8, 1962. The reserve was maintained at this level until August 20, 1963, when it was decreased to $7,500, apparently on advice of Aetna's legal department. Before the lawsuit was ever filed by Niedbalski against Western and Zandier, the home office of Aetna, as well as its claims department, was aware of the possible exposure under the comprehensive liability policy (T., pp. 19–20, 23, 27, 38).

█ Meanwhile, acting on Lightning's report, Aetna proceeded to investigate promptly. Within 12 days of the accident, on November 28, 1961, it took the statements of Niedbalski, Zandier and Whigham, the only witnesses. Aetna was in no way prejudiced by the lack of written notice from Western and Zandier.

It was stipulated by the parties that "from the time when Niedbalski brought suit against Western until the time that the case was settled Aetna had full and complete knowledge of the course of the litigation and of all significant developments taking place therein."

█ The reasonable notice clause is designed to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of all, and to enable the insurer to make a timely defense against any claim filed. Hackmeister, Inc. v. Employers Mut. Liability Ins. Co., 403 Pa. 430, 433, 169 A.2d 769, 770 (1961). We think written notice given by the named insured is sufficient notice on behalf of any additional insureds under the policy, if they are properly identified. In the case at bar, the written notice properly identified the additional insureds. It is immaterial whether the named insured or the additional insured or any other person notified the insurer in writing of the accident. Cf. Bethlehem Steel Company v. Continental Casualty Co., 208 F. Supp. 354 (E.D.Pa.1958), citing Morris v. Bender, 317 Pa. 533, 177 A. 776 (1935); McClellan v. Madonti, 313 Pa. 515, 169 A. 760 (1934).

It is apparent that Aetna was promptly notified of the accident and claim; that it had complete knowledge of all that transpired from the time of the accident until Niedbalski's claim was settled; and that no prejudice was suffered by it in the circumstances. In our opinion Aetna's contractual obligation should be enforced.

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

An appropriate order will be entered.