CASUALTY INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. E.W. CORRIGAN CONSTRUCTION COMPANY, INC., Defendant and Counterplaintiff-Appellant.

First District (1st Division)  No. 1—91—2403

Opinion filed May 17, 1993.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (John J. Piegore, of counsel), for appellant.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Patti M. Deuel, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Casualty Insurance Company (Casualty), brought a declaratory judgment action against defendant, E.W. Corrigan Construc-

tion Company, Inc. (Corrigan), seeking a declaration that it had no duty to defend or indemnify Corrigan due to Corrigan's failure to comply with the notice requirement of an insurance policy. Corrigan then filed a cross-motion for declaratory judgment and a motion for summary judgment. Casualty responded by filing a cross-motion for summary judgment. The trial court entered summary judgment in favor of Casualty and against Corrigan on the grounds that the notice by Corrigan was not given "as soon as practicable" as required by the contract.

Corrigan is a Delaware corporation licensed to do business in Illinois. It is a general contractor involved in building construction. In July 1986, Corrigan was the general contractor for Phase Two of the construction of the Stewart Glenn Apartments project (Stewart Glenn) in Willowbrook, Illinois. E.W.C. Contractors, Inc. (E.W.C.), is an Illinois corporation. E.W.C. is a concrete subcontractor and was never involved in any manner with the Stewart Glenn construction project.

Corrigan and E.W.C. share the same suite of offices at 1900 Spring Road in Oakbrook, Illinois, and have the same phone number. Additionally, the officers of both corporations are the same. Corrigan employs secretaries, accounting clerks, and a controller while E.W.C. does not employ office help. Consequently, phone calls to E.W.C. are answered by employees of Corrigan. Additionally, any paperwork for E.W.C. is done and received by employees of Corrigan.

The Gustafson-Lindberg Company (Gustafson) was the subcontractor on the Stewart Glenn project. Gustafson had two insurance policies with Casualty: an employer's liability policy (WC 85—28367), which covered Gustafson against any workers' compensation claims, and a general liability policy (GAL 85—28367), which insured against any claims of bodily injury or property damage. The Insurance Group, Inc. (Insurance Group), is an insurance "producer" authorized by Casualty to issue insurance certificates in Casualty's name. The Insurance Group issued a certificate adding Corrigan as an additional insured on Gustafson's general liability policy. According to the policy, it is a prerequisite to coverage that Casualty be given notice of any incident which it may ultimately be under a duty to indemnify or defend. The relevant portion of the policy provides as follows:

"4. Insured's duties in the event of occurrence, claim, or suit:

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the in-

jured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative."

Gerard Hernon (Hernon) was an employee of Gustafson. On July 29, 1986, Hernon was injured while on the job at the Stewart Glenn jobsite when he fell from the roof. On July 30, 1986, Gustafson mailed written notice of the incident by sending to Casualty "Form 46" captioned "Employer's First Report of Injury or Illness." Casualty received the notice on or about August 1, 1986. The form referenced Gustafson's employer liability number WC 85—28367 and included, *inter alia*, the name of the injured employee, the date, place and circumstances of the occurrence, the name of the insured, Gustafson, and the fact that Gustafson was a subcontractor on the job. The form did not mention Corrigan, nor did it reference Gustafson's general liability policy, number GAL 85—28367. According to Casualty's answers to interrogatories, Casualty then opened a workers' compensation file. Its investigation centered around the extent of Hernon's injuries and, after Hernon's workers' compensation claim was settled, the file was closed.

On July 29, 1988, the last day of the two-year statute of limitations, Hernon filed suit against E.W.C. for personal injuries arising out of his fall at the Stewart Glenn jobsite. On August 4, 1988, E.W.C. received service of summons and complaint at its offices. On August 5, 1988, it tendered the defense of the case to the Wausau Insurance Company. The summons and complaint were the first notice to either E.W.C. or Corrigan of the occurrence involving Hernon.

Subsequently, Hernon realized he mistakenly had sued the wrong party and E.W.C. was dismissed from the suit. On April 21, 1989, Hernon filed an amended complaint against Corrigan. On May 19, 1989, Corrigan was served with summons and complaint and the same day it tendered its defense to Casualty claiming it was an additional insured under the general liability policy written for Gustafson. On June 2, 1989, Corrigan sent its second notice to Casualty of the occurrence. On February 21, 1990, Casualty filed its complaint seeking a declaration that it was not obligated to defend or indemnify Corrigan. Casualty asserted that Corrigan "knew or should have known" from the date the original suit incorrectly was filed against E.W.C. in July 1988 that a claim was being asserted against it. Therefore, its failure

to notify Casualty until May 1989 was a breach of the provision of the insurance contract requiring reasonable notice. Subsequently, on March 26, 1990, Casualty refused Corrigan's tender of defense.

On October 2, 1990, Corrigan filed a counterclaim for declaratory judgment. Corrigan then filed a motion for summary judgment in which it maintained that it gave reasonable notice to Casualty. Casualty filed a cross-motion for summary judgment contending that Corrigan violated the policy's notice requirement by failing to give notice for more than nine months. On June 26, 1991, the trial judge heard arguments on the motions and granted summary judgment in favor of Casualty and against Corrigan.

The trial judge held that Corrigan breached the notice requirement of the insurance contract by not giving notice "as soon as practicable." The judge found that Corrigan received notice of the occurrence when E.W.C. was served with summons and complaint and, at that time, should have informed Casualty of the existence of a potential claim. The judge also concluded that the notice to Casualty from Gustafson immediately following the occurrence did not inure to the benefit of Corrigan because of the "significant differences with respect to the liability question in a personal negligence lawsuit and workmen's compensation cases." Therefore, the judge held that Corrigan failed to give reasonable notice under the circumstances to Casualty as a matter of law and entered summary judgment for Casualty. Corrigan appeals.

The first issue to be addressed is whether notice of an occurrence from the employer of an injured party under a workers' compensation policy satisfies the notice requirements for an additional named insured under a general liability policy issued by the same insurer. Specifically, the question in this case is whether the timely notice of the occurrence given by Gustafson to Casualty inured to Corrigan's benefit by including "particulars sufficient to identify the insured." This is an issue of first impression in Illinois as no Illinois court has addressed the portion of an insurance contract's notice provision which requires that the insured be sufficiently identified.

Casualty asserts that the workers' compensation notice by its insured, Gustafson, was insufficient to satisfy the additional insured's, Corrigan's, notice obligations under the general liability policy. Specifically, Casualty points out that Gustafson's notice did not name Corrigan and did not refer to Gustafson's general liability policy. The notice only referred to Gustafson's workers' compensation policy.

Corrigan, on the other hand, points to the "plain language" of the policy. Corrigan argues that the policy does not require that an in-

sured be explicitly named or that the party giving notice "identify to the insurer which of two policies, general liability or worker[s'] compensation, may cover a particular personal injury occurrence."

A general principle in Illinois is that insurance policies are to be liberally construed and clear provisions are to be interpreted in their " 'plain, ordinary, and popular sense.' " (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930, quoting *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7, 12.) Any ambiguities are to be interpreted in favor of the insured. (*United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 74, 578 N.E.2d at 930.) Additionally, notice to an insurer of an occurrence need not be given by the insured to be sufficient; any responsible person may be the source of the information "as long as a reasonable notice is given." (*Gregory v. Highway Insurance Co.* (1960), 24 Ill. App. 2d 285, 296, 164 N.E.2d 297, 302.) In view of the "plain language" of the provision which requires that notice include "particulars sufficient to identify the insured," we must initially agree with Corrigan that failure to include the name of the additional insured and the relevant policy number is not, in and of itself, fatal to the adequacy of the notice.

Corrigan next contends that Gustafson's notice provided all the necessary "particulars" such as the time, place and circumstances of the occurrence such that Corrigan could easily be identified as an additional insured "from the policy documents readily available to Casualty." Casualty responds, however, that the documents identifying Corrigan as an additional insured are not readily available to it and, therefore, the notice provided was insufficient. Casualty asserts that, although the Insurance Group had the authority to issue an insurance certificate naming Corrigan as an additional insured, "Casualty did not have a copy of the certificate, nor did its procedure mandate that it have a copy." According to Casualty, it relies upon the notice provision of its insurance contracts which requires that notice of an occurrence include "particulars sufficient to identify the insured." Casualty asserts that Corrigan's argument would require the court to ignore the terms of the contract and would shift the obligation of notice of an occurrence from the insured to the insurer. Casualty contends that, if Corrigan prevails, the investigation the insurance companies would need to conduct would be both impractical and economically unfeasible. Casualty maintains that, after initial notice of an occurrence, it would have to determine if any other of its policies were in force. This would mean that the insurance company not only could not

safely stop with reviewing the policies in its possession, but would have to contact "all of its producers, agents, and/or brokers which may have, during the respective policies periods, issued any certificates of insurance naming an additional insured." Casualty asserts that, in contrast to this burdensome investigation, all Corrigan needed to do is to provide written notice of the incident and to identify itself as an additional insured under Gustafson's policy.

Casualty is correct in that all Corrigan had to do was to provide notice identifying itself. However, the notice provision, which we note was written by the insurance company, only requires "particulars sufficient to identify the insured" and not written notice expressly identifying the insured. We cannot say that the insured must provide a type of notice which the policy does not require.

According to Casualty, if a policy is written or an insured is added to an existing policy, Casualty does not know until notice of an occurrence is sent to it by the insured. If this is so and Casualty does not keep track of who it has insured, how does Casualty determine what its monetary reserves require or even what its projected liability over a period will be? On its face, it is nonsensical to contend that Casualty does not know who it has insured, or that, once Casualty receives notice of an occurrence, it would be "impractical and economically unfeasible" for it to determine if other policies are in force.

■■ Casualty also argues that notice of a workers' compensation claim should not be deemed to satisfy the notice requirement of a general liability policy handled by a different department and cites to *Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 368 N.E.2d 465, for the proposition that knowledge of one department of an insurance company is not automatically attributed to another department. In *Mollihan* (52 Ill. App. 3d at 1036, 368 N.E.2d at 467), defendant made a "material misrepresentation" on his application for automobile insurance and, when the misrepresentation was discovered, the company began the process of rescinding the policy. Before the rescission information was able to be processed into the computer, however, defendant was involved in a collision and an agent for the insurance company paid defendant for the damage to his car. The *Mollihan* court held that the insurance company did not waive the defense of rescission because no intent to relinquish the defense could be implied from the conduct of the insurer or its agent. The agent's lack of knowledge of the rescission when he paid the claim was based solely on the fact that the information had not yet been given to the computer. (*Mollihan*, 52 Ill. App. 3d at 1041, 368 N.E.2d at 471.) Additionally, the court noted that in order to find waiver, it must be clear

that to allow the defense to be advanced would be "unjust, inequitable or unconscionable." (*Mollihan*, 52 Ill. App. 3d at 1041, 368 N.E.2d at 471.) Based on this case, defendant asserts that notice to one department of an insurance company should not be attributed to another department.

The *Mollihan* case is clearly distinguishable. The issue of whether the insurer has waived a defense is not analogous to whether it has received adequate notice of an occurrence. Waiver of a defense requires an intent implied from the insurer's conduct. (*Mollihan*, 52 Ill. App. 3d at 1041, 368 N.E.2d at 470.) If a department of an insurance company inadvertently does not have notice of certain information, intent to waive a defense clearly cannot be implied. This does not mean the department would not be held to have notice of that information in a different situation or context.

We believe that "the better rule of law" is that a department of an insurance company should not be able to "disclaim knowledge of that which is known to another department of the same company." As Corrigan points out in its brief "a contrary rule would put a premium on ignorance and encourage insurers to conceal their knowledge." We find persuasive the following rhetorical question from *Duggan v. Travelers Indemnity Co.* (1st Cir. 1967), 383 F.2d 871, 874:

> "[O]nce a notice of claim is filed, is it too much to ask that an insurer have a reasonable filing system, that its employees check the files for more than one policy covering the same insured for the same risk, and that, if questions arise over coverage, it surface them and, while reserving such rights as it sees fit to assert, proceed both to preserve the rights of its policyholder and itself? [Citation.] We think not. And we are confident that contemporary office systems and management are up to the task." (*Duggan*, 383 F.2d at 874.)

If notice of an occurrence is sent to a large insurance company, there is "no reasonable excuse" why that notice should only be received by the workers' compensation department and not the liability department. We agree with the *Duggan* court and conclude that an insurer " 'is chargeable with knowledge of all policies issued by it to the insured.' " (*Duggan*, 383 F.2d at 875, quoting *Dietlin v. General American Life Insurance Co.* (1935), 4 Cal. 2d 336, 351, 49 P.2d 590, 598.) In other words, if an insurer receives timely written notice of an occurrence, it is "sufficient to charge [the insurer] on all policies running in favor of the insured." (*Dietlin*, 4 Cal. 2d at 350, 49 P.2d at 597.) Additionally, we note that the policy requires that notice be given "to the company or any of its authorized agents." It does not

require that notice be given to a specific department of the company. Therefore, if an insured notifies its insurer of an occurrence and references its workers' compensation policy, it should be considered notice in regard to any general liability policy the insured might have with the same insurer. (See *Dietlin*, 4 Cal. 2d at 350-51, 49 P.2d at 597-98 (notice referring to a policy concerning one department of insurer satisfies the requirements of notice in another policy concerning a different department).) Consequently, it should also be considered adequate notice to the insurer for any additional insured named on the general liability policy.

Casualty asserts, however, that an investigation undertaken pursuant to a general liability policy is "completely different" from an investigation pursuant to a workers' compensation claim. Since fault is not an issue, a workers' compensation investigation is concerned with the extent of the injury and whether it was incurred during the scope of employment. An investigation pursuant to a liability policy, on the other hand, is concerned with the question of liability. Casualty cites several cases from other jurisdictions which recognize the potential difference between a workers' compensation investigation and a liability investigation. In *Commercial Contractors Corp. v. American Insurance Co.* (1964), 152 Conn. 31, 202 A.2d 498, Commercial contended that American was not prejudiced by lack of timely notice since it had received notice from another entity pursuant to a workers' compensation policy and had immediately conducted an investigation. In the context of determining whether American was prejudiced by lack of timely notice, the supreme court of errors of Connecticut determined that Commercial had the burden of showing lack of prejudice to American and without evidence in the record of the extent and nature of American's investigation "it [cannot] be held as a matter of law on the facts before us that the compensation investigation was substantially similar to an investigation which would have been made under a liability policy or was or should have been of a character such as to result in the discovery of Commercial as an additional, *unnamed* insured under [the] liability policy." (Emphasis added.) (*Commercial Contractors*, 152 Conn. at 39, 202 A.2d at 502.) In *Philadelphia Electric Co. v. Aetna Casualty & Surety Co.* (1984), 335 Pa. Super. 410, 417, 484 A.2d 768, 771-72, the superior court of Pennsylvania stated:

> "[A]s the lower court's opinion correctly points out, the investigation conducted by Aetna pursuant to that [workers' compensation] claim was materially different from the type of investigation Aetna would have conducted in preparation for this personal liability defense. Therefore, we cannot say that this

worker's compensation claim, in and of itself, alerted Aetna of its potential responsibility."

We recognize that there is potentially a distinct difference between an investigation undertaken pursuant to a workers' compensation claim and an investigation started in connection with a general liability policy. An insurer should not be able to claim prejudice on this ground, however, simply because the insured referenced his workers' compensation file and not any general liability policies he may have had with the insurer when he sent notice. The requirement that notice of an occurrence be given to the company and include "particulars sufficient to identify the insured" does not require that, if the insured holds more than one policy with the insurer, he identify to the insurer which of the two policies, general liability or workers' compensation, covers the particular accident nor that the notice be directed to a particular department. As Corrigan points out, its business and Gustafson's business is construction, not insurance. Therefore, the burden of determining how to treat an insured's notice of occurrence should fall solely upon the insurer. If Casualty treated Gustafson's notice of occurrence solely as a workers' compensation case, the decision was solely Casualty's, and the burden of any difference in the focus of its investigation must lie with the insurance company. As the *Dietlin* court stated, "[t]he defendant's division of its business among several departments should not be permitted to work a hardship upon the insured." (*Dietlin*, 4 Cal. 2d at 350, 49 P.2d at 598.) We note the commonsense reasoning of the *Duggan* court when it asks

"whether there are many [insureds] who can answer correctly the question: for just what risks are you covered by your various policies, or, how comprehensive is a comprehensive policy? We grant that basic commitments are to be undertaken seriously by policyholders. And one of the most important is to inform the insurer when and how—and soon—[that] something has happened that has or might hurt them. This done, we think they have fulfilled their initial duty." *Duggan*, 383 F.2d at 874.

Casualty cites *Employers' Liability Assurance Corp. v. Travelers Insurance Co.* (2d Cir. 1969), 411 F.2d 862, 866, which stands for the proposition that notice to an insurer by the employer of an injured employee for purposes of workers' compensation coverage is insufficient to serve as notice by an unnamed additional insured under an automobile liability policy. This case is distinguishable, however, because the additional insured was *unnamed* and was an insured by virtue of his status as a permissive user of a motor vehicle. Short of being expressly notified of the insured's existence, the insurer would

never know of him. In this case, however, Corrigan was an additional insured who was *named* in the certificate of insurance as an additional insured.

In support of its argument that Gustafson's notice to Casualty was sufficient to satisfy its obligation to give notice, Corrigan refers the court to three cases in addition to *Duggan*. Corrigan cites to *Sinclair Oil Corp. v. New Hampshire Insurance Co.* (1970), 107 R.I. 469, 477, 268 A.2d 281, 285, in which the insurance company argued that because notice was received from its named insured in connection with its workers' compensation policy, it was insufficient to satisfy the notice requirement required to be given by the additional insured under a general automobile liability policy. The supreme court of Rhode Island held that, in view of the fact that the insurance company was informed of the name of its named insured, the notice of occurrence given in connection with a workers' compensation policy was sufficient to satisfy the additional insured's notice obligation under the general policy issued by the same insurer. (*Sinclair*, 107 R.I. at 477, 268 A.2d at 285.) The *Sinclair* court stated that the insurance company was "without standing to claim that one of its divisions is so unrelated to another as to make notice to one inoperative to the other." *Sinclair*, 107 R.I. at 477, 268 A.2d at 285.

In *Western Freight Association v. Aetna Casualty & Surety Co.* (W.D. Pa. 1966), 255 F. Supp. 858, 861, *aff'd* (3d Cir. 1967), 371 F.2d 541, the named insured gave notice one day after the accident. The *Western Freight* court reasoned that the notice from the named insured placed Aetna in a position to be able to identify the additional insureds and determine "on whose behalf notice should be deemed to have been given." (*Western Freight*, 255 F. Supp. at 862.) The court concluded, therefore, that the notice from the named insured inured to the benefit of the additional insureds because Aetna had prompt notice of the occurrence, knowledge of all the relevant facts of the incident, and was not prejudiced. *Western Freight*, 255 F. Supp. at 862.

Finally, in *Employers Casualty Co. v. Glens Falls Insurance Co.* (Tex. 1972), 484 S.W.2d 570, 574-75, the supreme court of Texas addressed the issue of whether written notice of an accident from a named insured inured to the benefit of an additional insured. The question was one of first impression for the court. The Texas court concluded that, although there is a difference of opinion in other jurisdictions,

> "the weight of authority and the better rule appears to be that written notice of an accident by the named insured inures to the benefit of any additional or omnibus insureds if it is

timely and sufficient to place the insurer on inquiry as to the extent of its possible liability and omnibus coverage under the policy." (*Employers Casualty*, 484 S.W.2d at 575.)

Additionally, the Texas court noted that there was evidence in the record that, in response to the notice, the insurance company made "a timely, full and complete investigation" of the accident. (*Employers Casualty*, 484 S.W.2d at 576.) Therefore, the purpose of the notice requirement was fulfilled and the insurer was not prejudiced by any lack of notice. As a result, the court held that the notice from the named insured satisfied the additional insured's obligation and that any other conclusion would permit the insurer "to escape liability on a technicality" unrelated to its ability to promptly investigate the accident and prepare to defend any claims thereafter asserted against the additional insureds. *Employers Casualty*, 484 S.W.2d at 576.

After reviewing the arguments, briefs, and authority from this and other jurisdictions, we conclude that the timely notice from Gustafson referencing its workers' compensation policy was "sufficient to place the insurer on inquiry as to the extent of its possible liability." Therefore, the notice satisfied the requirements for Corrigan as an additional named insured under a general liability policy issued by Casualty by including "particulars sufficient to identify the insured." Consequently, we reverse the trial court's entry of summary judgment in favor of Casualty and against Corrigan and enter judgment in favor of Corrigan and against Casualty. In light of our disposition of this issue, we need not determine whether Corrigan's notice to Casualty nine months after it became aware of the occurrence constituted reasonable notice.

For the foregoing reasons, we reverse the decision of the circuit court of Cook County and remand with instructions to enter an order consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.