No. 4-97-0672

IN THE APPELLATE COURT

 

OF ILLINOIS

FOURTH DISTRICT

THE CINCINNATI INSURANCE COMPANY, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Sangamon County

BAUR'S OPERA HOUSE, INC., a Delaware ) No. 96MR001

Corporation, d/b/a BAUR'S OPERA )

HOUSE, and MARK W. STEARNES, ) Honorable

Defendants-Appellees. ) Robert J. Eggers,

) Judge Presid­ing.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Mark W. Stearnes filed a personal injury lawsuit in state court against defendant Baur's Opera House, Inc. (Baur's).  Baur's was in­sured by plain­tiff, the Cin­cin­nati In­sur­ance Com­pa­ny (Cin­cin­nati).  Cin­cinnati filed a de­clara­to­ry judg­ment action against de­fen­dants al­leg­ing it was not obli­gated to defend or indemnify Baur's be­cause neither of the defendants notified it of the state lawsuit, thereby breaching the insur­ance policy.  Cin­cin­nati and Stearnes filed cross-mo­tions for sum­mary judg­ment argu­ing whether Cin­cin­nati re­ceived rea­son­able notice of the lawsuit.  The trial court de­nied Cincinnati's mo­tion and grant­ed Stearnes' mo­tion.  We find insuf­ficient evi­dence proving Cin­cin­nati re­ceived reason­able no­tice of the state law­suit.  We re­verse and remand the trial court's judg­ment.

I. BACKGROUND

In January 1991, Stearnes filed a complaint in the United States District Court for the Central District of Illi­nois.  The origin of the complaint was an altercation between Stearnes and Baur's employees in February 1990.  The complaint alleged Baur's em­ploy­ees dis­crim­i­nat­ed against Stearnes based on his race.  The com­plaint fur­ther al­leged negligence, false im­pris­on­ment, false arrest, and mali­cious pros­ecution claims against Baur's.  Baur's was served with a summons and copy of the com­plaint in January 1991.  Baur's noti­fied Cincin­nati of the feder­al law­suit and Cincin­nati retained attorneys to defend Baur's.

Cincinnati's at­tor­neys con­duct­ed discov­ery, filed in­ter­rogato­ries, and took 14 deposi­tions in response to Stearnes' cause of action.  In Febru­ary 1992, the attorneys filed a mo­tion for sum­ma­ry judg­ment, which was granted in March 1992.  See 
Stearnes v. Baur's Opera House, Inc.
, 788 F. Supp. 375, 379 (C.D. Ill. 1992).  In a let­ter dated April 1992, the at­tor­neys noti­fied Cin­cin­nati of the dis­trict court's deci­sion and stated "[w]e can an­tic­i­pate [p]laintiff's attorney re­fil­ing the [s]tate claims in [s]tate [c]ourt."  The dis­trict court's deci­sion was appealed to the Unit­ed States Court of Ap­peals for the Sev­enth Cir­cuit, and upon re­mand, the com­plaint was dismissed for lack of ju­ris­dic­tion in No­vem­ber 1993.  See 
Stearnes v. Baur's Opera House, Inc.
, 3 F.3d 1142, 1145 (7th Cir. 1993).

In March 1993, be­fore Stearnes' time ran out for fil­ing a com­plaint in state court (735 ILCS 5/13-217 (West 1992)), he filed a com­plaint in the cir­cuit court of Sangamon Coun­ty, alleg­ing state law claims identi­cal to those al­leged in the fed­eral com­plaint.  In April 1993, George W. Baur (George), prin­ci­pal owner of Baur's, was served with a sum­mons and a copy of the state com­plaint.  In June 1993, George died.  After his death, Cincinnati's attorneys con­tinued to rep­re­sent Baur's in the fed­eral lawsuit.  However, George's estate failed to notify Cin­cin­nati or its attorneys of the state lawsuit.  In Janu­ary 1994, Paul Presney, Sr., an attorney not retained by Cin­cin­nati, filed an ap­pear­ance on be­half of Baur's in the state law­suit.

In July 1995, Baur's filed bankruptcy.  As a re­sult, Stearnes' state lawsuit was automatical­ly stayed.  In Sep­tember 1995, the bankruptcy court granted Stearnes relief from the auto­mat­ic stay and provided him with leave to pursue any avail­able insurance.  In Octo­ber 1995, Stearnes' at­tor­ney con­tact­ed Cin­cin­nati regard­ing set­tle­ment negotiations.  In No­vem­ber 1995, Cin­cin­nati re­sponded by stating it was investi­gat­ing the claim and would con­tact Stearnes after it re­viewed the case.  Cincin­nati also sent a letter to the bank­ruptcy trustee, Mariann Pogge, notifying her it intended to defend Baur's pursuant to its res­erva­tion of rights.  In December 1995, Cin­cin­nati sent a sec­ond letter to Pogge in­forming her coverage was being denied be­cause Baur's failed to pro­vide rea­sonable notice of Stea­rnes' state lawsuit.

In Janu­ary 1996, Cin­cin­nati filed this de­clar­a­to­ry judg­ment ac­tion, arguing it did not re­ceive reason­able no­tice of the state lawsuit.  Cincinnati argued Baur's in­sur­ance poli­cy was breached; therefore, it did not have a duty to defend, in­dem­nify, or other­wise cover Baur's in regard to the state law­suit.  Stearnes re­sponded arguing Cincinnati, via the federal law­suit, received sufficient notice of the state cause of action.  Baur's never responded to the declaratory judgment action.  

Cin­cin­nati and Stearnes filed cross-mo­tions for sum­ma­ry judg­ment arguing whether Cincinnati received reasonable notice.  In April 1997, the trial court grant­ed Stearnes' mo­tion.  In May 1997, the trial court de­nied Cincinnati's motion to re­consid­er.  In July 1997, as a re­sult of Baur's failure to ap­pear or other­wise plead, the court entered a finding pur­su­ant to Illi­nois Su­preme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which permitted Cin­cin­nati to file this ap­peal.

II. ANALYSIS

On appeal, Cincinnati contends the trial court erred in denying its summary judgment motion and grant­ing Stearnes' summa­ry judg­ment mo­tion.  When reviewing summary judgment motions, the evi­dence is re­viewed 
de
 
novo
 and con­strued in the light most fa­vor­able to the nonmovant.  See 
Walk­er v. Rogers
, 272 Ill. App. 3d 86, 89, 650 N.E.2d 272, 274 (1995), cit­ing 
Gil­bert v. Syca­more Mu­nic­i­pal Hos­pi­tal
, 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792 (1993).  Sum­ma­ry judg­ment is prop­er­ly en­tered when the pleadings, depo­si­tions, ad­mis­sions, and affi­da­vits fail to estab­lish a gen­u­ine issue of mate­rial fact, thereby enti­tling the mov­ant to judg­ment as a matter of law.  735 ILCS 5/2-1005(c) (West 1994).  

Further, the mov­ant bears the bur­den of per­sua­sion and the ini­tial burden of produc­tion.  
Carruthers v. B.C. Chris­to­pher & Co.
, 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459 (1974); 
Rice v. AAA Aerostar, Inc.
, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998).  Only if the mov­ant sat­is­fies the ini­tial bur­den of pro­duc­tion does the burden shift to the nonmovant to pres­ent some fac­tual basis argu­ably entitling him or her to a favor­able judg­ment.  See 
Carruthers
, 57 Ill. 2d at 380, 313 N.E.2d at 459; 
Rice
, 294 Ill. App. 3d at 805, 690 N.E.2d at 1070.

Baur's in­sur­ance poli­cy re­quires its proprietors to noti­fy Cin­cin­nati of any lawsuit filed against Baur's.  The poli­cy states the fol­low­ing:

"4. Insured's Duties in the Event of Occur­ rence, Claim or Suit.

(a) In the event of an occur­rence, 

written notice containing particu­ lars suffi­cient to identify the insured and also rea­sonably obtain­ able infor­mation with re­spect to the time, place and cir­cum­stances there­of, and the names and ad­dress­ es of the in­jured and of avail­able wit­nesses, shall be given by or for the in­sured to the company or any of its au­tho­rized agents as soon as prac­tica­ble.

(b) If claim is made or suit is brought against the insured, the insured shall imme­diately forward to the company every demand, notice, sum­ mons, or other pro­cess received by him or his rep­re­sentative."

Cincinnati argues Baur's breached the insurance policy when it failed to notify Cincinnati of the state law­suit with­in a rea­son­able time period.

A no­tice pro­vi­sion, such as the one in this case, is a valid condi­tion prece­dent and not a mere tech­ni­cal re­quire­ment for the con­ve­nience of the insurer.  
Millers Mutual Insur­ance Ass'n v. Graham Oil Co.
, 282 Ill. App. 3d 129, 140, 668 N.E.2d 223, 231 (1996).  Gen­eral­ly, Stearnes may garnish Baur's insur­ance fund only if Baur's could have col­lect­ed on the in­sur­ance poli­cy.  Thus, Baur's fail­ure to com­ply with the notice pro­vision allows Cin­cin­nati to deny cov­erage under the in­sur­ance poli­cy, ab­sent some public policy rea­son bar­ring Cin­cin­nati from raising this de­fense.  See 
Reisman v. Delgado
, 117 Ill. App. 3d 331, 333-34, 453 N.E.2d 902, 904 (1983).  Compliance with the pro­vi­sion re­quires noti­fi­ca­tion of the law­suit with­in a rea­son­able time period, con­sidering all the facts and cir­cum­stances of the par­ticu­lar case.  See 
American Family Mutual In­surance Co. v. Blackburn
, 208 Ill. App. 3d 281, 288, 566 N.E.2d 889, 893 (1991).

Despite the language contained in the insur­ance poli­cy, Baur's need not forward "every demand, notice, sum­mons, or other process" received in connection with the law­suit.  Cin­cin­nati is lia­ble under the in­sur­ance poli­cy so long as it received "actual notice," 
i.e.
, notice sufficient for it to lo­cate the law­suit and de­fend Baur's.  See 
Keep­ers v. Powell
, 131 Ill. App. 2d 423, 427, 268 N.E.2d 488, 491 (1971); 
Long v. Great Cen­tral In­sur­ance Co.
, 190 Ill. App. 3d 159, 168, 546 N.E.2d 739, 744 (1989).

A. 
Actual
 
Notice

Stearnes contends Cincinnati's defense of Baur's in the federal lawsuit pro­vid­ed suf­fi­cient no­tice of the state law­suit.  He ar­gues Cin­cin­nati, by deny­ing cov­er­age, is rely­ing on a tech­ni­cal breach of the notice pro­vi­sion unrelat­ed to its ability to inves­tigate the allega­tions or its obliga­tion to represent Baur's.  See 
Casualty Insur­ance Co. v. E.W. Corrigan Construc­tion Co.
, 247 Ill. App. 3d 326, 332-35, 617 N.E.2d 228, 233-35 (1993).  Stearnes' reliance on 
Corrigan
 misplaced.  Con­trary to Stearnes' as­ser­tions, no­tice of a fed­eral law­suit does not equate to "actu­al no­tice" of a later state lawsuit, re­gard­less of the simi­lar­i­ties be­tween the com­plaints.  Instead, the 
Corri­gan
 court con­cluded once an insurer re­ceives no­tice of a claim under its insured's workers' compensa­tion in­sur­ance poli­cy, it has no­tice of any law­suits aris­ing out of the same oc­currence cov­ered by its insured's gen­eral lia­bility in­sur­ance poli­cy.  This no­tice is also suffi­cient for law­suits brought against any addi­tional in­sureds listed under the general lia­bili­ty policy.  
Cor­ri­gan
, 247 Ill. App. 3d at 333, 617 N.E.2d at 233-34.

Stearnes did not bring one law­suit seek­ing to re­cover under multiple insurance poli­cies.  Rath­er, he brought two law­suits in separate and distinct court systems.  Es­sen­tial­ly, Stearnes ar­gues Cin­cin­nati bears the bur­den of lo­cat­ing the state lawsuit for a period of one year fol­lowing the dismiss­al of the federal law­suit be­cause a state law­suit should have been expect­ed.  Cin­cin­nati does not bear this bur­den.  The mere possi­bil­ity Stearnes would file suit in state court is in­suf­fi­cient to con­stitute "actu­al no­tice" of the law­suit.  See 
Rice
, 294 Ill. App. 3d at 808, 690 N.E.2d at 1072; 
Johnson v. Samuels
, 40 Ill. App. 2d 417, 420, 189 N.E.2d 780, 782 (1963).

The failure of George or his estate to for­ward a copy of the law­suit to Cin­cin­nati or its attorneys breached Baur's insur­ance policy.  Stearnes' attorney knew Cincinnati retained at­tor­neys to defend Baur's in the federal lawsuit and could have pre­served his client's rights to gar­nish the in­sur­ance fund in any number of ways.  See 
Rice
, 294 Ill. App. 3d at 808, 690 N.E.2d at 1072.  Based on this re­cord it appears Cin­cin­nati did not re­ceive "ac­tual no­tice" of the state law­suit until Stearnes ini­ti­ated set­tle­ment nego­tia­tions in Octo­ber 1995, 2½ years af­ter the law­suit was filed.

B. 
Notice
 
Within
 
a
 
Reasonable
 
Time
 
Period

  
 What con­sti­tutes rea­son­able no­tice, usu­ally a ques­tion of fact, be­comes a question of law when, as in this case, the facts are not in con­tro­ver­sy.  
Blackburn
, 208 Ill. App. 3d at 288, 566 N.E.2d at 894.  Cin­cin­nati ar­gues the 2½-year delay was un­rea­son­able, there­by con­sti­tut­ing a breach of the insurance poli­cy.  Stearnes asserts Cincinnati was not preju­diced by the de­layed notice be­cause it already defended the iden­tical claims in federal court; therefore, public policy re­quires Cin­cinnati to represent and defend Baur's.

Generally, when deciding whether notice was rea­son­able, the court considers George's (1) so­phis­tica­tion re­gard­ing in­sur­ance poli­cies, (2) awareness of the occurrence or law­suit as de­fined under the terms of the poli­cy, and (3) dili­gence in as­cer­taining wheth­er policy cov­erage is available.  See 
Ameri­can Coun­try In­surance Co. v. Bruhn
, 289 Ill. App. 3d 241, 247, 682 N.E.2d 366, 370 (1997); 
Blackburn
, 208 Ill. App. 3d at 288, 566 N.E.2d at 894.  Additionally, whether Cin­cin­nati suffered prejudice as a result of the delayed notice is a fac­tor to be con­sidered.  See 
Millers Mutual
, 282 Ill. App. 3d at 141, 668 N.E.2d at 232.  However, a lengthy delay in re­ceiv­ing no­tice is not 
per
 
se
 prej­udicial and may be ex­cused if George's ac­tions were rea­son­able under the circum­stanc­es.  See 
Bruhn
, 289 Ill. App. 3d at 247-48, 682 N.E.2d at 371.  

George's failure to forward the documents to Cincinnati or its attorneys was unreasonable.  He re­ceived no­tice of the state law­suit while Cincinnati's attor­neys were rep­re­sent­ing Baur's in the fed­eral lawsuit.  He knew Baur's in­sur­ance poli­cy re­quired him to notify Cin­cin­nati of the state law­suit, as evi­denced by the com­pli­ance with the no­tice pro­vi­sion during the fed­er­al suit.  Fur­ther, the in­sur­ance poli­cy ex­plic­itly re­quired George to for­ward "
every
 de­mand, no­tice, sum­mons, or other pro­cess" he re­ceived.  (Emphasis added.)  George's failure to notify Cin­cin­nati was unreasonable, there­by mak­ing the 2½-year delay in re­ceiv­ing no­tice inexcusable.

Stearnes as­serts he did not noti­fy Cin­cin­nati be­cause Presney, Baur's at­tor­ney in the state law­suit, as­sured his attor­ney Cin­cin­nati would be noti­fied of the state law­suit.  Stearnes con­tends his attorney's detrimen­tal reliance on Presney's state­ment makes the delay in no­tice reason­able and excus­able.  We find this argu­ment un­per­sua­sive.  Stearnes' at­tor­ney knew Presney was not retained by Cincinnati to represent Baur's in the federal and state lawsuit, there­by making his reli­ance on Presney's as­sur­ances unreasonable and un­jus­tified.

Previously, the appellate court held lack of prej­u­dice is a fac­tor to be considered only when there is a rea­son­able excuse for the delay in no­tice.  See 
Twin City Fire In­sur­ance Co. v. Old World Trading Co.
, 266 Ill. App. 3d 1, 8-9, 639 N.E.2d 584, 589 (1993).  Cin­cinnati contends the unrea­son­able delay makes prej­udice irrele­vant to this court's deci­sion.  How­ev­er, this court recently stated for Cincinnati to escape liability, it must suf­fer prej­udice as a result of Baur's fail­ure to time­ly noti­fy it of a law­suit.  See 
Rice
, 294 Ill. App. 3d at 807, 690 N.E.2d at 1072.  The pur­pose of the no­tice of the lawsuit provi­sion is to protect Cin­cin­nati's inter­ests by en­abling it to lo­cate and de­fend the law­suit.  See 
Rice
, 294 Ill. App. 3d at 807, 690 N.E.2d at 1071.  Cin­cin­nati re­ceived no­tice of the state law­suit prior to final judgment being en­tered, there­by pro­vid­ing it with the op­portunity to de­fend its insured.  Thus, the provision's pur­pose has been satis­fied and Cin­cin­nati must prove it suf­fered prej­u­dice.

   C. 
Prejudice

Stearnes contends Cin­cin­nati was not prej­u­diced by the de­layed notice because it al­ready de­fended the iden­tical claim in feder­al court; there­fore, pub­lic poli­cy re­quires Cin­cinnati rep­resent Baur's in the state lawsuit.  See 
Rivota v. Kaplan
, 49 Ill. App. 3d 910, 921, 364 N.E.2d 337, 346 (1977).  Cin­cin­nati con­tends it suf­fered prej­u­dice be­cause the stat­ute of limi­tations on con­tri­bu­tion claims expired six months before it re­ceived notice.  In support of its argu­ment, Cincin­nati cites section 13-204(b) of the Illinois Code of Civil Proce­dure (Code) (735 ILCS 5/13-204(b) (West 1994)).  Section 13-204(b) of the Code became effective January 1, 1995, and ap­plies ret­ro­ac­tive­ly un­less it lim­its any con­tri­bu­tion rights vested prior to the statute's en­act­ment.  See 735 ILCS 5/13-204(d) (West 1994); 
Ganci v. Blauvelt
, 294 Ill. App. 3d 508, 514, 690 N.E.2d 649, 652-53 (1998); 
Lin v. City of Chi­ca­go
, 276 Ill. App. 3d 13, 14, 657 N.E.2d 8, 9 (1995).  

Contrary to Cincinnati's assertions, we find section 13-204(b) of the Code inapplicable because Baur's rights to seek contribution vested prior to its enactment.  However, once Baur's re­ceived notice of Stearnes' state lawsuit in April 1993, its con­tri­bu­tion rights ac­crued pur­su­ant to sec­tion 5 of the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/5 (West 1992)).  See 
Hayes v. Mercy Hos­pi­tal & Medi­cal Cen­ter
, 136 Ill. 2d 450, 459, 557 N.E.2d 873, 877 (1990); 
Ca­bal­le­ro v. Rockford Punch Press & Manu­fac­tur­ing Co.
, 244 Ill. App. 3d 333, 336, 614 N.E.2d 362, 364 (1993).  For exam­ple, Baur's could have sought con­tri­bu­tion from those em­ploy­ees who were involved in the alter­ca­tion with Stearnes.  Under sec­tion 5 of the Act, any ac­tion brought by Baur's seeking con­tri­bu­tion was sub­ject to the same stat­ute of limi­ta­tion ap­pli­cable to Stearnes' un­der­lying cause of ac­tion, which began to run when George was served with process in April 1993.  See 
Ca­bal­lero
, 244 Ill. App. 3d at 337-38, 614 N.E.2d at 365.

Because Stearnes' federal law­suit was dismissed in March 1992 for lack of jurisdiction, his refiling of the lawsuit in state court was subject to a one-year statute of limitations.  See 735 ILCS 5/13-217 (West 1992).  However, the stat­ute of limi­ta­tions ap­pli­cable to the underlying cause of action, 
i.e.
, Stearnes' per­son­al inju­ry law­suit, was two years.  See 735 ILCS 5/13-202 (West 1992).  Thus, Baur's had until April 1995, or two years from the day it received no­tice of the state law­suit, to file an action seeking contribu­tion.  See 
Lin
, 276 Ill. App. 3d at 14, 657 N.E.2d at 9 (plaintiff's per­son­al inju­ry law­suit against the City of Chi­cago was sub­ject to a one-year stat­ute of limi­ta­tions im­posed by the Local Governmental and Gov­ern­men­tal Employees Tort Immu­ni­ty Act (745 ILCS 10/8-101 (West 1992)); how­ev­er, the City of Chicago's con­tri­bu­tion claim was sub­ject to the two-year limi­tation on per­sonal inju­ry claims because the person­al injury lawsuit was the under­lying cause of ac­tion).  While this decision allows a defen­dant an additional year to file a contri­bution claim, it pro­tects a newly named de­fen­dant in the re­filed law­suit who may not have received notice of the orig­i­nal cause of action.  Thus, the "new" de­fen­dant is given ap­pro­pri­ate time to file a con­tri­bu­tion claim.­

Stearnes asserts the federal lawsuit was, in ef­fect, an underly­ing action for the state lawsuit.  He contends Cin­cin­nati's fail­ure to raise its contribution claims during the pen­dency of the federal lawsuit pro­hib­its it from rais­ing con­tri­bu­tion claims there­af­ter.  How­ev­er, the fed­er­al lawsuit is not the under­lying action from which the contribution claims arose; rath­er, the state law­suit is a new cause of action from which Baur's rights to contribution arise.  Re­cent­ly, the su­preme court ad­dressed wheth­er an ac­tion brought pursu­ant to sec­tion 13-217 of the Code con­sti­tutes a new and dis­tinct ac­tion.  In 
Dubina v. Mesirow Realty Develop­ment, Inc.
, 178 Ill. 2d 496, 504, 687 N.E.2d 871, 875 (1997), the court held ac­tions brought pur­su­ant to sec­tion 13-217 of the Code consti­tute new and dis­tinct ac­tions separate from those actions previ­ously filed.  There­fore, Stearnes' state law­suit constitutes a new under­lying ac­tion.

Stearnes also contends Cincinnati's rights to contribu­tion do not exist because Stearnes himself was unable to file a claim against any third-party defendants.  However, this argument as­sumes facts not before the court on summary judgment.  Neither the court nor Stearnes knows from whom Cincinnati may seek con­tri­bu­tion.  Stearnes' inability to locate third-party defendants does not infringe upon Cincinnati's right to seek con­tri­bu­tion.

Accordingly, we con­clude the 2½-year delay in re­ceiv­ing no­tice did prej­u­dice Cincinnati's ability to seek con­tri­bu­tion on behalf of Baur's.

III. CONCLUSION

For the reasons stated, we reverse and remand the trial court's judgment.  Cincinnati's summary judg­ment mo­tion may be re­sub­mitted, including evidence consistent with this court's opinion in 
Rice
, 294 Ill. App. 3d at 809, 690 N.E.2d at 1072.

Reversed and remanded for further proceedings.

GARMAN, P.J., and STEIGMANN, J., con­cur.